PHILIP LAURITANO, Appellant, *v.* AMERICAN FIDELITY FIRE INSURANCE COMPANY et al., Respondents.

First Department, May 7, 1957.

566

*William G. Mulligan* of counsel (*Joshua J. Nasaw, Milton Kaplan* and *William Palitz* with him on the brief; *Joshua J. Nasaw,* attorney), for appellant.

*William L. Shumate* of counsel (*Cusack & Shumate,* attorneys), for American Fidelity Fire Insurance Company, respondent.

*Brendan C. Kelly* of counsel (*Mendes & Mount,* attorneys)', for American Universal Insurance Company, respondent.

*George T. Nicholson* of counsel (*John B. Asch,* attorney), for Standard Accident Insurance Company, respondent.

BOTEIN, J.  On May 21, 1952 plantiff was seriously injured when the car in which he was riding as a passenger was struck by a large tractor-trailer.  The tractor-trailer, which was owned by one Joseph Forzano, was at the time of the accident rented to S. S. D. Trucking Corp. and was then on its way to make a pick-up.

Plaintiff brought action against Joseph Forzano and S. S. D. Trucking Corp. and obtained a default judgment against them in the sum of $50,189.75.  This judgment has remained uncollected.  Forzano having moved out of the State and S. S. D. Trucking Corp. having gone out of business, plaintiff invoked the provisions of section 167 of the Insurance Law and brought the present action directly against their automobile liability insurers.  After trial by the court without a jury the complaint was dismissed, and from the judgment thereupon entered in favor of defendant insurance companies plaintiff appeals.

The judgment in favor of defendant Standard Accident Insurance Co., Forzano's liability insurer, must be affirmed.  The

policy which Standard issued to Forzano, as owner of the tractor-trailer, afforded him only what was known as " deadhead " coverage, and was denominated " Insurance for Non-Trucking Use ". The policy specifically provided that it did not apply " while the automobile is being used in the business of any person or organization to which the automobile is rented ". The policy language is clear and unambiguous; and it appearing without dispute that at the time of the accident Forzano's vehicle was rented to S. S. D. Trucking Corp., there can be no liability on the part of defendant Standard.

Different considerations apply to the defenses of defendants American Fidelity Fire Insurance Co. and American Universal Insurance Co., which were the primary and excess liability insurers, respectively, of S. S. D. Trucking Corp. Their policies specifically covered hired equipment being operated in the interest of S. S. D., and there would be no question of coverage of the insured under their policies were the policy provisions otherwise complied with.

However, S. S. D. gave no notice of the accident to its insurers. Plaintiff, unaware and unadvised of the fact that the vehicle had been rented to S. S. D., did not himself notify S. S. D.'s insurers of the accident and of his claim until June 12, 1953. This was almost 13 months after the date of the accident. The trial court held the delay to be excessive and dismissed the complaint.

The policies specified that no action should be maintainable " unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy ". They called for the giving of notice of the accident " as soon as practicable", and also required the " immediate " forwarding of every demand, notice, summons or other process. Undeniably S. S. D., the insured, failed to comply with either condition.

At one time, the liability insurance policy was regarded as the concern only of the insured and his insurer, as exclusive parties to the contract. Any act or omission by the insured which would have released his insurer from liability would inevitably have precluded recovery by those whose claims against the insurer were wholly derivative. However, the Legislature, recognizing that an injured party, while not privy to the insurance contract, had a genuine interest in it and should be enabled to invoke its protection, enacted section 109 of the Insurance Law, forerunner of the present section 167, to create, as its heading indicates, an independent right of the injured person to proceed directly against the liability insurer (L. 1917, ch. 524). Successive amendments have profoundly altered what

was once commonly accepted—that the liability policy existed solely for the protection of the insured.

Today the injured party is no longer wholly dependent upon the diligence and conscientiousness of the person who caused him injury. It was precisely because accident victims could be deprived of all possibilities of recovery through the irresponsibility, obduracy or neglect of the insured that section 167 of the Insurance Law was amended (L. 1939, ch. 882) to require every liability policy to contain:

"(c) A provision that notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer.

"(d) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant thereunder if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible."

While the policies in suit did not contain such provisions, they must be construed as though they did conform to the statutory requirements (Insurance Law, § 143). Hence, it is clear that when the insured has failed to give proper notice, the injured party, by giving notice himself, can preserve his rights to proceed directly against the insurer.

All members of this court are in agreement that the standards by which the notice given by the injured party must be judged differ from those governing notice given by the insured. The statute having granted the injured person an independent right to give notice and to recover thereafter, he is not to be charged vicariously with the insured's delay (*Pitts* v. *Aetna Cas. & Sur. Co.*, 218 F. 2d 58, 62 [2d Cir., 1954], cert. denied 348 U. S. 973). When the injured party has pursued his rights with as much diligence "as was reasonably possible" the statute shifts the risk of the insured's delay to the compensated risk-taker who can initially accept or reject those for whom it will bear such risks.

The injured person's rights must be judged by the prospects for giving notice that were afforded him, not by those available to the insured. What is reasonably possible for the insured may not be reasonably possible for the person he has injured. The passage of time does not of itself make delay unreasonable. Promptness is relative and measured by circumstance. Thus,

in *Solomon* v. *Continental Fire Ins. Co.* (160 N. Y. 595) notice given a considerable time after the event insured against had occurred, but within three days after plaintiff, an assignee of the original insured, was able to ascertain the identity of the insurer, was held to be timely. In *Greenwich Bank* v. *Hartford Fire Ins. Co.* (250 N. Y. 116, 131) it was held, although the policies required immediate notice, that notice given by a receiver of an insured corporation, as soon as he learned of the existence of insurance policies and the names of the insurers, was given within a reasonable time. And in *Bazar* v. *Great Amer. Ind. Co.* (306 N. Y. 481, 489) it was observed that a notice given to a liability insurer over 20 months after an accident would not have been untimely in the absence of prior knowledge, had the notice been in writing. Notice can hardly be given until there is knowledge of the facts upon which notice can be predicated (*Trippe* v. *Provident Fund Soc.,* 140 N. Y. 23).

The majority finds as a fact that the notice given to S. S. D.'s liability insurers was given by plaintiff as soon as it was reasonably possible for him to do so. Plaintiff did not know at the time of the accident who was responsible for the operation of the tractor-trailer, which bore Alabama license plates. Plaintiff's original attorney and his successor constantly and aggressively pressed the search for the necessary information, following up their letters with telephone calls, personal visits, and inquiries directed to the Motor Vehicle Bureaus of New York and Alabama, the Police Department, the Public Service Commission and the Interstate Commerce Commission. The owner, Forzano, remained inaccessible despite the barrage of letters and telephone calls directed to him. It was not until seven months after the accident that plaintiff's attorney was able to communicate directly with Forzano. Only then was it learned, for the first time, that at the time of the accident Forzano's tractor-trailer had been hired out to S. S. D.

Plaintiff immediately communicated with S. S. D., moved to join it as a party defendant in the action that had been commenced, and then served it with a supplemental summons and complaint. But despite a succession of promises, S. S. D. did not divulge the identity of its insurers. Plaintiff attempted to invoke the aid of the court and moved to compel disclosure through an examination. However, S. S. D. managed to put off the examination several times, so it was not until another six months had elapsed that plaintiff finally ascertained the identity of S. S. D.'s insurers.

As soon as plaintiff's attorney obtained the names of S. S. D.'s insurers he wrote them, giving them detailed notice of the acci-

dent and offering to furnish them with the suit papers and to give them an opportunity to interpose an answer and defend on the merits. Of course, it is conceivable that plaintiff could have taken other and further steps to discover the identities of the insurance companies involved at an earlier date. There are few investigative activities, when analyzed retrospectively against the background of the known facts, that will not yield up faster and more direct avenues to the truth — particularly when the investigation is pursued against obstructive tactics. But plaintiff's efforts must be judged by the standard of what appeared reasonable at the time. Viewed in that light, plaintiff's notice to S. S. D.'s insurers immediately upon learning their identities must be deemed to have been given as soon as it was reasonably possible for him to do so.

Nevertheless, defendants urge, even if plaintiff himself be deemed to have given timely notice of the accident under the statute, recovery would still be barred because S. S. D. failed to comply with the additional policy condition that " If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative ". This is a condition which defendants contend could be complied with only by the insured; and there is at the least a serious issue of fact as to whether S. S. D. did forward the suit papers served by plaintiff within the time specified in the policies. It should be observed, however, that this condition of the policy appears under the heading " Notice of Claim or Suit ", immediately after the provision for " Notice of Accident ".

In giving notice of the accident the insured must on his own initiative ·compile and transmit the necessary information, but he can give notice of claim or suit merely by forwarding whatever papers are received by him. The requirement that all. suit papers be forwarded is, by the very provisions of the policies, but another species of notice; and the statute (Insurance Law, § 167, subd. 1, par. [d]) provides that " failure to give *any* notice required to be given by such policy within the time prescribed therein " (italics supplied) is not to invalidate any claim if such notice is given as soon as reasonably possible. The comprehensive statutory language embraces the entire notice complex. There is no justification for differentiating among notice of accident, notice of claim and notice of suit.

The injured person, having been accorded an independent statutory right, must be given an opportunity to exercise that right. It would avail him little to be allowed to give notice of the accident himself, if he still were barred because the notice of

claim and suit papers could be transmitted only by the insured. The accident victim's independent right of notification must also include the forwarding of suit papers or the right is completely illusory. We cannot consistently hold that plaintiff's notice of accident on June 12, 1953 was timely and nevertheless rule that the notice of suit he gave in the same letter on the same day was ineffective and came too late.

An insurer can be seriously prejudiced by the failure of the insured to furnish it with a prompt report of the accident, with a description of the time, place and circumstances and the names and addresses of persons injured and of witnesses. Nevertheless, the carrier's right to an early investigation must, under the mandate of section 167 of the Insurance Law, yield to the paramount right of the accident victim to protection, no matter how dilatory the insured may have been.

The right to the immediate transmission of whatever papers have been served upon the insured is by no means of comparable value to the carrier. The opportunity for investigation while the facts are still fresh, once missed, is gone forever. Notice of the accident, when furnished by the injured person, may not make available the same facts that the insured may have been able to supply. On the other hand, delayed transmission of claims notices or suit papers by the insured, or the receipt of such documents directly from the claimant, will be less likely to cause irremediable harm. It would be a rare occasion indeed when the carrier could not be placed in just as good a position as it would have enjoyed had the insured complied fully with his obligations. Here, plaintiff offered to waive any defaults, to make the entire plaintiff's file available, and to allow a complete defense on all issues.

Nor can the failure of the insured to act as the conduit of transmission be taken as a violation of the condition requiring the insured to co-operate with the company. While the defense of the insured's refusal to co-operate is reserved to the insurer (Insurance Law, § 167, subd. 5), the obligation to give notice is independent of the duty to co-operate (*Rochon* v. *Preferred Acc. Ins. Co. of N. Y.*, 118 Conn. 190; *Rushing* v. *Commercial Cas. Ins. Co.*, 251 N. Y. 302, 305). If the co-operation clause were to be construed literally, every failure of the insured to give timely notice of any kind would constitute a violation of that condition. The acts of co-operation called for by that provision unlike the giving of notice, do not admit of adequate performance by anyone other than the assured; i.e., attendance at hearings and trials (*Briskman* v. *Glens Falls Ind. Co.*, 251 App. Div. 319), disclosure of pertinent information (*Coleman* v. *New*

*Amsterdam Cas. Co.*, 247 N. Y. 271), the furnishing of evidence (*Seltzer* v. *Indemnity Ins. Co. of North America*, 252 N. Y. 330), the signing of necessary papers and pleadings (*American Sur. Co.* v. *Diamond*, 206 Misc. 309, affd. 285 App. Div. 1138) and the like. The insured is also required to refrain from collusion in assisting in a recovery by claimants (*Roth* v. *National Automobile Cas. Co.*, 202 App. Div. 667). At times, co-operation must be requested before it can be said to have been refused (*American Sur. Co.* v. *Sutherland*, 35 F. Supp. 353; *Shalita* v. *American Motorists Ins. Co.*, 266 App. Div. 131, 133, motion for leave to appeal denied 266 App. Div. 885). In any event, a defense of lack of co-operation may be waived (*Ohrbach* v. *Preferred Acc. Ins. Co.*, 227 App. Div. 311).

In this case defendant insurers made no attempt to defend under a reservation of rights or otherwise, let alone to enlist the co-operation of the insured. The unavailability of a breach of this condition as a defense was apparently recognized by the defendants, who failed to allege the breach of the co-operation condition as an affirmative defense. The point cannot be raised now.

The judgment in favor of the defendant Standard Accident Insurance Co. should be affirmed, with costs to said defendant, and the judgment for the defendants American Fidelity Fire Insurance Co. and American Universal Insurance Co. should be reversed and judgment entered for the plaintiff against said defendants American Fidelity Fire Insurance Co. and American Universal Insurance Co. in the sum of $50,000, with costs. Settle order.

Frank, J. (dissenting). The plaintiff was injured on May 21, 1952, in New York City, when a car owned and operated by Joseph Doria, and in which he was a passenger, collided with a tractor-trailer owned by one Joseph Forzano, and operated by one Nicholas Vulpi. Vulpi was proceeding to pick up a cargo for S. S. D. Trucking Corp. to whom Forzano had rented the vehicle.

In March, 1954, the plaintiff recovered a substantial judgment by default against Forzano and S. S. D. Since Forzano has left the State and S. S. D. has gone out of business, the judgment remains unsatisfied.

The defendant, Standard Accident Insurance Company, provided coverage upon its policy issued to Forzano, and American Fidelity Fire Insurance Company and American Universal Insurance Company, respectively, issued policies to S. S. D. as primary and excess insurers.

Thereafter, the plaintiff started this action against the automobile liability insurers of Forzano and S. S. D., pursuant to section 167 of the Insurance Law. After a nonjury trial, judgment was entered in favor of all the defendants. We agree that the judgment in favor of Standard Accident Insurance Co. should be affirmed. However, we are constrained to dissent from a reversal of the judgment entered in favor of American Universal Insurance Co. and American Fidelity Fire Insurance Co. and to vote to affirm, for two specific reasons. We shall first discuss our disagreement with the conclusion reached by the majority upon the proven facts. Enough of section 167 of the Insurance Law is quoted in the majority opinion to obviate the need for repetition here. It is sufficient to say that the law requires that an indemnity policy contain a provision that a claim is not invalidated if the written notice required from an injured person was given '' as soon as was reasonably possible.''

The trial court found that the protracted delay in giving notice of the accident was fatal to the plaintiff's action and dismissed the complaint. The majority, in reversing, find that the plaintiff gave notice of the accident to S. S. D.'s carrier '' as soon as it was reasonably possible for him to do so.'' We do not disagree with Mr. Justice BOTEIN's statement that '' The passage of time does not of itself make delay unreasonable '' and that '' Promptness is relative and measured by circumstance.'' Nor do we quarrel with the cases cited in support thereof. Lack of diligence, however, connotes more than the mere passage of time. In the final analysis, every case must stand on its own facts and what may be reasonable conduct over the same period of time under one set of circumstances may be wholly unreasonable under another.

The trial court's determination upon the facts should not be disturbed. A resume of the evidence amply demonstrates that the plaintiff failed to give the required notice of accident or claim as soon as reasonably possible.

There is no dispute that S. S. D. failed to give notice of any kind to its carrier and failed to transmit process served upon it. It is conceded that plaintiff did not himself notify the insurers of the accident until 13 months after it had occurred.

At the time of the accident, Doria, the owner and operator of the car in which the plaintiff was a passenger, obtained the names and addresses of both Forzano, the owner of the trailer, and Vulpi, the driver. The following day, Doria filed a report of the accident with the State Motor Vehicle Bureau (stamp-dated May 27, 1952) revealing Forzano as the owner of the trailer,

Vulpi as its driver, their respective addresses in New York City, as well as the vehicle's registration number.

On May 22, 1952, the plaintiff retained Joseph V. Riggio, a member of the New Jersey Bar, who thereupon wrote a letter to the New York City Police Department requesting a copy of the police report of the accident. In it, he stated that Doria's automobile had been involved in a collision with a truck owned by Forzano and operated by Vulpi. It is, therefore, apparent that Riggio knew something about all of the parties involved in the accident, save S. S. D. On May 29, 1952, Riggio wrote to Forzano advising him that he had been retained by the various passengers in Doria's car to institute suit in their behalf. He sent another letter to Forzano on June 30, 1952, asking for the name of Forzano's carrier so that he might communicate directly with it. Receiving no answer to these communications, Riggio made a personal visit to the residence of Forzano on July 15, 1952. He found no one at home and left his card with a message requesting Forzano to contact him. This was the only attempt by the plaintiff's attorney, Riggio, to contact Forzano personally. On October 2, 1952, Riggio again wrote to Forzano to the same effect as previously. Riggio also wrote two letters to Vulpi. These efforts elicited no response from either Forzano or Vulpi.

On August 6, 1952, Riggio received a letter from the State Motor Vehicle Bureau advising him that Forzano was covered by Standard. Riggio made no attempt to communicate directly with that company. It is a fair inference that had Riggio made prompt inquiry, it might have resulted in an investigation by Standard with the consequent revelation that Forzano's truck was under hire by S. S. D. at the time of the accident.

It was not until October 24, 1952, five months after the accident, that the plaintiff, at Riggio's suggestion, retained Joshua J. Nasaw, a member of the New York Bar. Riggio testified that he delivered his entire file to Nasaw, or at least the pertinent papers therein. Significantly, he did not advise Nasaw of Forzano's insurance coverage by Standard. He had either misplaced or lost the letter from the Motor Vehicle Bureau containing that information and had completely forgotten the name of Standard. Riggio's conduct in misplacing the letter suggests laxity on his part, and certainly is chargeable to his principal, the plaintiff herein.

There can be no doubt that within a comparatively short time after the accident Riggio knew that both Forzano and Vulpi resided in this city and that the venue of any action against them should be laid in New York. Despite this, he

made no vigorous or sustained effort to contact either of them personally. Instead, he procrastinated for more than five months before advising the plaintiff to retain New York counsel. The proof discloses that from May to October of 1952, Riggio conducted negotiations with Doria's insurer, the Globe Indemnity Company, discussed the plaintiff's claim, and settled the cases of some of the other passengers. Riggio admitted that he was anxious to dispose of the plaintiff's claim, without referral to New York counsel, because he could then retain the entire fee without sharing it. It is apparent that Riggio's tactics resulted in a needless delay of several months in giving notice to the defendants. Riggio's lack of diligence must be charged to the plaintiff.

The evidence discloses that when Nasaw delivered the summons dated November 7, 1952 to a process server, it was served upon Forzano within a few days. The reasonable inference to be drawn from such prompt service of process is that had Riggio made persistent efforts to contact Forzano personally, he would have learned that Forzano's truck was under hire to S. S. D.

Nasaw's efforts to contact Forzano, at least for the first few weeks after he was retained, were hardly more diligent. He testified that he fruitlessly attempted to reach Forzano by telephone on four or five occasions between November 18 and December 4.

On December 26, 1952, Nasaw interviewed Forzano for the first time. On that occasion, Forzano willingly disclosed the information concerning his insurance coverage on the tractor-trailer and its rental to S. S. D. On the same day, Nasaw contacted S. S. D. by telephone. He spoke with one of its officers who was unable to give him the name of its insurance carrier. After successfully joining S. S. D. as a party defendant in the negligence action, the plaintiff served a supplemental summons and complaint. On June 12, 1953, some six months after learning of S. S. D.'s rental of Forzano's truck, Nasaw finally obtained the names of the insurance carriers. He immediately gave them notice of the accident and offered to furnish them with suit papers and an opportunity to interpose an answer and defend the action on the merits.

Neither Riggio nor Nasaw made any serious efforts to personally contact Vulpi, the chauffeur operating the truck at the time of the accident, who knew that the vehicle had been rented to S. S. D. The vital information concerning coverage might thus have been promptly obtained.

The proof that notice was given '' as soon as was reasonably possible,'' as required by section 167, is essentially a question of fact which, if decided adversely to a claimant, cuts off the right to maintain an action in the same way as does a Statute of Limitations. It cannot, however, be treated by a claimant or his lawyer with the indulgence permitted when a fixed period is provided. Attorneys may not relate '' reasonably possible '' to a one, two, three or six-year Statute of Limitations and leisurely proceed on that basis.

In this case, Riggio, more concerned with the disposition of Lauritano's claim against Doria which he finally settled for $5,750, made only sporadic and half-hearted attempts to contact Forzano. Moreover, it is clear that he himself would have no right to initiate legal proceedings in New York, thus being compelled to cease treating his client's matter as a claim and to transmit it for legal proceedings to a New York lawyer. Riggio's ignorance of the requirements of section 167 cannot serve to exculpate the plaintiff from the failure to comply therewith.

The burden of explaining or excusing delay and establishing that it was reasonable rests upon the plaintiff. As the injured person, he stands in the shoes of the assured, and is chargeable with the breach of the conditions on which liability depended. (*Rushing* v. *Commercial Cas. Ins. Co.*, 251 N. Y. 302; *Abitante* v. *Home Ind. Co.*, 240 App. Div. 553.) Under the circumstances in this case, there has been no convincing evidence that plaintiff's belated notice of accident to S. S. D. was given '' as soon as was reasonably possible.''

Upon the facts, therefore, we must hold that there is ample proof in the record to sustain the trial court's finding that the '' plaintiff did not meet the test of reasonableness '' and that '' [t]he further delay * * * was also excessive.'' (P. 934.)

Assuming *arguendo,* however, that the findings of the trial court are properly reversed and that the notice of claim was given to the defendants as soon as reasonably possible, we must, nevertheless, dissent.

We cannot accept the thesis that the furnishing of copies of the summons and complaint in the negligence action to these defendants can be interpreted to be a compliance with the conditions of the policy which require that the assured '' shall immediately forward '' such process to the company.

Prior to the enactment of section 167, which incorporated all of its predecessor, section 109, an injured person had no cause of action against the insurer of the tort-feasor, due to the lack of privity of contract between them. (*Jackson* v. *Citizens Cas.*

*Co.,* 277 N. Y. 385; *Burke* v. *London Guar. & Acc. Co.,* 47 Misc. 171, affd. 126 App. Div. 933, affd. 199 N. Y. 557.)

To obviate the hardships which arose for that reason and the inability of the injured person to claim the benefits of an insurance contract of indemnity, the Legislature enacted these remedial statutes. (*Jackson* v. *Citizens Cas. Co., supra; Coleman* v. *New Amsterdam Cas. Co.,* 247 N. Y. 271.)

The plaintiff asserts that section 167 of the Insurance Law created an original obligation in favor of the injured person against the carrier for the amount of any judgment recovered, unfettered by any breach of the contract conditions between the insurer and assured. There is no merit to the contention. If the insured violated an important condition (such as No. 7 here), it would bar a recovery by the policy holder. The rights of a claimant rise no higher than, but are dependent upon, the rights of the assured. While the purpose of the statute is to give an injured person an independent cause of action against an insurer, it is subject, nevertheless, to compliance by the assured with the conditions contained in the policy (Insurance Law, § 167, subd. 1, par. [b]; *Coleman* v. *New Amsterdam Cas. Co., supra; Weatherwax* v. *Royal Ind. Co.,* 250 N. Y. 281[1]; *Fox* v. *Employers' Liability Assur. Corp., Ltd.,* 243 App. Div. 325, 331; *Royal Ind. Co.* v. *Watson,* 61 F. 2d 614, 616; *Schoenfeld* v. *New Jersey Fidelity & Plate Glass Ins. Co.,* 203 App. Div. 796, 800, 801; *Clements* v. *Preferred Acc. Ins. Co.,* 41 F. 2d 470; *New Jersey Fidelity & Plate Glass Ins. Co.* v. *Love,* 43 F. 2d 82; *Employers' Liability Assur. Corp.* v. *Perkins,* 169 Md. 269).

Thus, for example, paragraph (c) of subdivision 1 of section 167 does not require written notice by an assured. Notwithstanding, provisions (such as condition No. 6 in this policy) which require written notice have been held to bar recovery where notice, although not written, was given (*Bazar* v. *Great Amer. Ind. Co.,* 306 N. Y. 481; *Nothhelfer* v. *American Sur. Co.,* 277 App. Div. 1009, affd. 302 N. Y. 910; *Weatherwax* v. *Royal Ind. Co.,* 250 N. Y. 281).

The statute is in derogation of the common law and must, therefore, be strictly construed (*Royal Ind. Co.* v. *Travelers Ins.*

---

[1] In the *Weatherwax* case, Chief Judge CARDOZO, writing for the Court of Appeals, said: "Plaintiffs recovered judgments against Gainor upon claims for personal injuries. Execution being returned unsatisfied, they brought these actions under Insurance Law, § 109 (Cons. Laws, ch. 28), upon a policy of insurance issued by the defendant, whereby Gainor was indemnified against loss from liability for negligence. The rule is settled that a creditor, enforcing such a policy, stands in the shoes of the insured, and forfeits the insurance if there has been a breach of its conditions (*Coleman* v. *New Amsterdam Cas. Co.,* 247 N. Y. 271)."

*Co.*, 244 App. Div. 582, affd. 270 N. Y. 574; *Gutride* v. *General Reinsurance Corp.*, 167 Misc. 608, affd. 256 App. Div. 904).

The purpose of a policy provision, requiring that notice of an accident be given as soon as reasonably possible, is to afford the carrier an opportunity to make timely and adequate investigation. It thus tends to protect against fraudulent or exaggerated claims, as well as against invalid ones made in good faith. In asserting the defense of an unreasonably delayed notice, the carrier is not required to prove that it was prejudiced, although here the delayed notice has caused such harm to the insureds' rights. At the time it first received notice some 13 months after the accident, S. S. D. was no longer in business and its records had either been destroyed or were missing, and Forzano had left the State. The unavailability of S. S. D.'s records was particularly damaging to the defendants inasmuch as there was a sharp question as to the application of the coverage to Forzano's truck. S. S. D. failed to list Forzano's vehicle in its monthly reports of hired vehicles required to be furnished to its carrier for the assessment of premium charges; and for all we know, S. S. D. may never have paid the premium for the coverage.

In substance, section 167 directs that every policy effective in this State shall contain a provision (subd. 1, par. [e]) that in lieu of notice by the insured, written notice by or on behalf of the injured person or claimant shall be deemed notice to the carrier; and a provision (subd. 1, par. [d]) that any notice required by the terms of the policy if given " as soon as was reasonably possible " is sufficient. We agree with the majority that section 167 imports the requirements above noted into the terms of the policy. Nowhere in the section, however, is there any reference to any form of process.

In November, 1938, the Joint Legislative Committee for Recodification of the Insurance Laws recommended that changes be made in paragraphs (c)[1] and (d) of subdivision 1 of section 167. The proposal with respect to paragraph (d) was that notice was to be given as soon as was reasonably possible. The amendments thus made by chapter 882 of the Laws of 1939 transposed the old section 109 into section 167 virtually intact save for the changes indicated. In the legislative discussions, not a single mention was made that the term " notice " was to include " summons " or " process " of any kind. Not a word was uttered about " summons " or " process " or " suit papers ". It is a fair inference that if the Legislature intended

---

[1] For an excellent analysis of the legislation as it affected paragraph (c), see *Bazar* v. *Great Amer. Ind. Co.* (306 N. Y. 481).

to include such documents in providing for a written notice to be served by the injured person upon the carrier, it would have expressly so stated. The same rule should be applied here as was applied to section 109 when an assignee sought to maintain an action thereunder. It was held that the specific mention of those to whom the right of action is given implies the exclusion of others. The maxim *expressio unius est exclusio alterius* should be applied (*Jackson* v. *Citizens Cas. Co.,* 277 N. Y. 385, 390; *Aultman & Taylor Co.* v. *Syme,* 163 N. Y. 54, 57). The statute being confined to the word " notice " excludes the words " summons ", " process " or " suit papers ".

However much we may agree that it would be sound political economy and of benefit to society to hold that the " carrier's right * * * yield[s] to the paramount right of the accident victim to protection ", the courts do not have the power or authority to so decree, in the absence of clear statutory mandate.

Section 167, just as its predecessor section 109, does not prevent a limitation of coverage by the carrier (*Devitt* v. *Continental Cas. Co.,* 269 N. Y. 474, 480; *Brustein* v. *New Amsterdam Cas. Co.,* 255 N. Y. 137, 143).

As already stated, S. S. D. never forwarded the summons and complaint served upon it to the carrier. Condition No. 7 of the policy provides: " 7 NOTICE OF CLAIM OR SUIT. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

As we view it, this condition imposes an obligation exclusively upon the insured to forward immediately any summons or other process received by him or his representative. The statute does not provide either expressly or by any fair reading thereof that the injured person may, in lieu of the insured, forward such process.

The majority holds that suit papers are but another form of notice and that there is " no justification for differentiating among notice of accident, notice of claim and notice of suit." While the three items mentioned are distinct and different and have separate purpose and meaning, we cannot, even if we accept the statement, equate the notices mentioned with the actual process and pleadings in an action. We cannot agree with the conclusion nor accept the semantic distortion of the word " notice " into the words " summons " or " process ".

The term " notice of suit " means something different from a summons or a process or suit papers, both linguistically and legally. The distinction becomes quite evident upon examination of section 52 of the Vehicle and Traffic Law. In addition to service of process upon the Secretary of State, notice of suit is required as part of the completion of a service of process upon a nonresident charged with liability arising from an accident occurring within the State (see *Tennant* v. *Farm Bur. Mut. Automobile Ins. Co.,* 286 App. Div. 117; *Kimball* v. *Midwest Haulers,* 195 Misc. 231). In some other States, service upon a nonresident under similar circumstances requires only that notice of suit be mailed to such a defendant, and the distinction between a notice and summons or process has been clearly drawn. (See *Vechery* v. *Hartford Acc. & Ind. Ins. Co.,* 121 A. 2d 681, 683-684 [Del.]; *New Jersey Fidelity & Plate Glass Ins. Co.* v. *Love,* 43 F. 2d 82, 85; *Employers' Liability Assur. Corp.* v. *Perkins,* 169 Md. 269; *Berg* v. *Associated Employers' Reciprocal & Ill. Ind. Exchange,* 47 Idaho 386; *Donlon* v. *American Motorist Ins. Co.,* 147 S. W. 2d 176 [Mo.]; same clause as Condition No. 7; *Campbell* v. *Continental Cas. Co. of Chicago,* 170 F. 2d 669; same clause as Condition No. 7.)

There does not appear to be any case in this State which has definitively drawn the distinction between a notice and process. Two cases (*Bazar* v. *Great Amer. Ind. Co.,* 306 N. Y. 481; *Pitts* v. *Aetna Cas. & Sur. Co.,* 218 F. 2d 58) do, however, supply a fair inference for a differentiation.[1]

There are many situations in which the insured in a negligence action may deem it more practical to defend himself rather than require his indemnitor to do so. That is his contractual right and privilege. It is not uncommon for an owner of a fleet of motor vehicles, because of preferred insurance rates, to assume the obligation of personal defense in lawsuits. Such an owner

---

[1] In the *Bazar* case, a summons and complaint was forwarded to the carrier. If the Court of Appeals had concluded that process was but another form of written notice under section 167, the result in that case might well have been different. The same distinction between process and notice is evident in the *Pitts* case which contains the following footnote (p. 61): " In the instant case, the trial judge in his charge said that, ' The insurance company had not only received a notice from Wiley's broker, but the summons and complaint which gave it complete notice of the accident.' *Bazar* v. *Great American Indemnity Co.,* 306 N. Y. 481, 119 N. E. 2d 346, perhaps holds that the summons and complaint do not constitute written notice by or on behalf of the insured to the insurance company. But even if, as to the summons and complaint, the trial judge here erred, the error is immaterial since the written notice from Wiley's broker was alone enough, and the jury was not misled since the issue was not left to the jury."

would rather pay the judgment or claim than require the carrier to assume the obligation and thereby cause him to lose his preferred rating. Or let us assume a situation where the policy coverage is limited and the exposure is substantial. In these circumstances, defendant may prefer to sacrifice his coverage and personally defend, in order to reduce his exposure to a judgment in excess of his policy limit. That was his right at common law and only the Legislature by express language can decree otherwise. Even in compulsory insurance the contractual relationship between the assured and his carrier applies and the Legislature has imposed no different status.

Indeed, in this action, S. S. D. admitted that in most " nuisance cases " it relieved the carrier of liability and assumed the risk, as " otherwise the rates would go up ". Having once voluntarily relieved the indemnitor, the insured is free to assume the defense of any action brought against it. Here, S. S. D. gave no notice of the accident to the defendants, and upon receipt of the supplemental summons and complaint assumed the defense of the action.

In the subject contract of insurance, the carrier agreed to defend claims against the assured and to make payment if required. The covenant, however, is made subject to the (Condition No. 7) that " [i]f claim is made or suit is brought against the insured, the insured shall *immediately* forward to the company every demand, notice, summons or other process received by him or his representative ". (Italics supplied.) Preceding the quoted conditions is another (Condition No. 6) requiring the assured to give written notice of an accident " as soon as practicable " or, substituting the statutory provisions for notice, " as soon as was reasonably possible ". The distinction between the two adds support to the conclusion that Condition No. 7 is an independent binding covenant. (*Rushing v. Commercial Cas. Ins. Co.,* 251 N. Y. 302, *supra; Citizens Cas. Co. of N. Y. v. Clark,* 245 App. Div. 38.) The provisions of the policy are unambiguous, and state that no action is maintainable " unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of the policy ".

Whatever the requirements may be with respect to notice, we must hold that the failure of S. S. D. to deliver the summons and complaint served upon it was fatal to this action. On the facts as well as on the law, the judgment should be affirmed.

PECK, P. J., and BREITEL, J., concur with BOTEIN, J.; FRANK, J., dissents and votes to affirm, in opinion, in which RABIN, J. concurs.

582

Judgment in favor of the defendant Standard Accident Insurance Co. affirmed, with costs to said defendant, and the judgment for the defendants American Fidelity Fire Insurance Co. and Universal Insurance Co. reversed, and judgment entered for the plaintiff against said defendants in the sum of $50,000, with costs. Settle order on notice.