Meyer, J.
(dissenting). What the majority by affirming
on the Appellate Division decision ignores, as did the Appellate Division, is that the injured claimant is Daniel Furman; it is Daniel, by his guardian, who sues; it is Daniel who has suffered physical injury for which he is entitled under our law to recover from his parents; it is Daniel as “claimant” who is protected by section 167 (subd 1, par [d]) of the Insurance Law from the invalidation of his claim if it be shown that notice “was given as soon as was reasonably possible” for him to give notice; it is Daniel as “claimant” who was, or whose appointed guardian was, entitled under subdivision 8 of section 167 of the Insurance Law to written notice of the carrier’s disclaimer of liability. The result of doing so is, moreover, wholly inconsistent with at least three previously unquestioned rules: (1) that an injured infant’s parents are entitled to recover only for loss of services during unemancipated minority and for past but not future medical expenses (Cuming v Brooklyn City R. R. Co., 109 NY 95), any recovery for the infant’s injury or for future medical expenses being “items of damage which personally belonged to the infant” and not to the parent (id.; Clarke v Eighth Ave. R. R. Co., 238 NY 246, 250; accord Cuming v Brooklyn City R. R. Co., supra; Benitez v Trumble, 57 AD2d 716; see 1 NY PJI2d 678; Ann., 32 ALR2d 1060, 1076); (2) that money recovered in an infant’s action compensates him or her for physical disability and suffering and may not be used to support other members of the family or the infant, even if the parent is on welfare, because the infant’s assets may not be used for the obligation of the parent (e.g., Matter of Smith v Lavine, 78 Misc 2d 776; Galante v Doe, 68 Misc 2d 295; Matter of Taff, 61 Misc 2d 602; Matter of Woods v Mason, 32 Misc 2d 745; Conigliaro v Rosa, 24 Misc 2d 15; De Marco v Seaman, 157 Misc 390); (3) that the Department of Social Services can assert a lien on the personal injury recovery by an infant for public assistance furnished the infant only to the extent that the recovery represents past medical expenses, but otherwise cannot reach money recovered by an infant for personal injury (Baker v Sterling, 39 NY2d 397, 406; see Ann., 80 ALR3d 772). The apparent basis for the present holding is the absence from section 167 of the *617 Insurance Law of any toll for infancy, but the simple answer is that we deal not with a Statute of Limitations the provisions of which can be tolled only as the Legislature has specifically directed, but with a legislatively mandated insurance policy provision the purpose of which is to ameliorate the notice provisions of the policy by limiting the carrier’s right to defend on notice grounds so as to exclude from that right any situation in which a claimant (whether infant or adult) gave notice “as soon as was reasonably possible.” Respectfully, therefore, I dissent.
I
The relevant facts are undisputed. On February 15, 1971, Daniel Furman, then four and one-half years old, was injured while he was playing in the basement of the family residence when an anvil fell from the tree stump on which his parents had placed it and injured his hand. Daniel’s parents were covered by a homeowner’s policy issued by Allstate Insurance Company (Allstate). Although Daniel’s mother testified that she had called Allstate and been told that the claim was not covered, Daniel’s parents concede that they never provided Allstate with written notice of the accident. Six years after the injury, on February 14,1977, Vincent Gentile was appointed Daniel’s guardian ad litem and, on March 23, 1977, commenced a personal injury action against Daniel’s parents to recover for Daniel’s injuries. A copy of the complaint served upon them was forwarded by Daniel’s parents to Allstate on April 18,1977. Allstate responded with a letter dated June 9,1977, addressed solely to the parents, disclaiming coverage because of “Late Notice and for other reasons” as stipulated in the policy. Neither Daniel nor his guardian or attorneys were sent written notice of the disclaimer.
Declaratory judgment actions brought by the guardian on Daniel’s behalf and by Allstate having been consolidated, the Supreme Court held that Daniel’s parents had failed to give Allstate timely written notice of the accident as required by the policy, but concluded that Daniel, the injured party, had independently notified Allstate in a timely fashion. It found the disclaimer letter timely but ineffective because the ground specified (late notice) was not available and the content of the disclaimer letter was *618 insufficient to raise any other ground for disclaiming. Accordingly, judgment was entered requiring Allstate to defend and indemnify the Furmans.
The Appellate Division reversed. It held that Allstate was not required to defend or indemnify the Furmans because, as a matter of law, Daniel’s infancy did not excuse their failure to give timely notice. Concerning the disclaimer, the Appellate Division stated without further amplification of the circumstances referred to that “under the circumstances of this case, the disclaimer of liability issued by Allstate was sufficient.” (84 AD2d, at p 34.) This reasoning, now adopted by the majority of this court, is erroneous, both as to notice of disclaimer by the carrier and as to notice of the occurrence to the carrier. Because, absent an effective disclaimer, the carrier cannot question the timeliness of notice to it, disclaimer will be considered first.
II
Subdivision 8 of section 167 of the Insurance Law provides: “If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant” (emphasis supplied). It is not disputed that written notice of disclaimer was not given to Daniel or his guardian. As to disclaimer, therefore, this case is governed by General Acc. Ins. Group v Cirucci (46 NY2d 862, 863-864) in which we noted that “an injured third party may seek recovery from an insured’s carrier despite the failure of the insured to provide timely notice of the accident (Lauritano v American Fid. Fire Ins. Co., 3 AD2d 564, affd 4 NY2d 1028). Although, under the facts of this case a disclaimer might have been premised on the late notice furnished by the third parties themselves to the insurer, since this ground was not raised in the letter of disclaimer, it may not be asserted now.” No disclaimer having been furnished to the injured person in the present case and the subdivision being worded in the conjunctive, *619 it is simply irrelevant to determination of this case that a disclaimer was sent to Daniel’s parents, the insured persons, or that they may have informed Daniel, or his guardian or the attorneys representing the guardian, of the disclaimer. The “insurer being highly experienced and sophisticated in such matters,” it is not unduly burdensome to hold it to the express requirements of the statute (General Acc. Ins. Group v Cirucci, loc. cit., supra; Metropolitan Prop. & Liab. Ins. Co. v Horner, 79 AD2d 869, app withdrawn 53 NY2d 940; see Hartford Ins. Co. v County of Nassau, 46 NY2d 1028).
The disclaimer notice to Daniel’s parents, even if timely as to them, was wholly ineffective as against Daniel and his guardian. The judgment entered by Special Term should, therefore, be reinstated.
III
Even if the absence of a proper disclaimer be disregarded, there should be a reversal, although in that event, the Appellate Division’s order of reversal having been “on the law,” the matter would have to be remitted to that court for consideration of the factual question whether Daniel’s notice to the carrier was given as soon as reasonably possible (CPLR 5612, subd [a]; 5712, subd [c], par 1).
The fallacy in the Appellate Division’s approach to the notice of occurrence issue is that the questions framed by it — whether “the notice requirement in the insurance policy is tolled on account of infancy” (84 AD2d, at p 29) and whether Daniel’s action is not “in reality” a suit by his parents against the carrier — are, as to the first irrelevant, and as to the second clearly erroneous.
The statute in question was not proposed to nor was it passed by the Legislature as a statute of repose. Quite the opposite, that body acted to ameliorate the effects of the contract of adhesion with which a purchaser of insurance was presented, by requiring that, every policy delivered or issued for delivery in this State contain certain specified provisions and be enforced as though it contained such provisions even if it did not (Insurance Law, § 143).
One such provision is section 167 (subd 1, par [d]), which mandates inclusion of “[a] provision that failure to give
*620 any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant thereunder if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.” The legislative history of the provision is instructive for, as originally enacted by chapter 524 of the Laws of 1917, the provision, then known as section 109, dealt only with the situation now covered by paragraph (a) of subdivision 1, that of the bankruptcy or insolvency of the insured, which, without the enactment of section 109, would, the insurance contract being one of indemnity, have left a successful claimant against the insured without means of obtaining satisfaction of his judgment from the insurer. In Jackson v Citizens Cas. Co. of N. Y. (277 NY 385, 390) we noted the injustice of the prior common law and “the mischief the Legislature was seeking to cure” and concluded “that the statute was drawn for the protection of injured plaintiffs.” The new provision, being in derogation of the common law, was, however, held to authorize an action only by the injured person and not by an assignee (id.), and not to create an obligation in favor of the injured claimant without reference to any breach of a policy condition by the insured (Rushing v Commercial Cas. Ins. Co., 251 NY 302; Coleman v New Amsterdam Cas. Co., 247 NY 271).
As is detailed at length in the opinion in Bazar v Great Amer. Ind. Co. (306 NY 481, 487-488), the concept of Rushing and Coleman that the injured person, except as to insolvency of the insured, stood in the shoes of the insured and was chargeable with any breach of condition by the insured, was carefully scrutinized by the Insurance Department and a legislative commission. Out of that study came the reviser’s proposal that a method be set up whereby the injured person could independently satisfy the notice requirements. That proposal, which was enacted, over opposition of the insurance industry which lobbied against “any mention of notice by a claimant” (Bazar, supra, at p 488 [emphasis in original]), as part of the extensive revision and recodification of the Insurance Law made by chapter 882 of the Laws of 1939, is paragraph (d) *621 of subdivision 1, quoted above. Thus, as stated in Lauritano v American Fid. Fire Ins. Co. (3 AD2d 564, 568, affd 4 NY2d 1028, supra), “It was precisely because accident victims could be deprived of all possibilities of recovery through the irresponsibility, obduracy or neglect of the insured” that paragraph (d) was enacted.
That the Legislature deliberately, carefully and clearly divorced the injured person’s rights against the insurer from those of the insured is, thus, beyond cavil. Indeed, we have so recognized both by our affirmance of Lauritano’s holding that “The statute having granted the injured person an independent right to give notice and to recover thereafter, he is not to be charged vicariously with the insured’s delay” (3 AD2d, at p 568) and by our own holding in General Acc. Ins. Group v Cirucci (46 NY2d 862, 863-864, supra) that “an injured third party may seek recovery from an insured’s carrier despite the failure of the insured to provide timely notice of the accident.”
Despite the separation, clearly etched by the Legislature and firmly indorsed by us, between the rights of a claimant and those of a policyholder against the insurer, the majority now carves an exception into the statutory scheme for the situation in which the claimant is the child of the insured. The conception that the parents are “in reality” the claimants is refuted by the cases set forth in the first paragraph of this opinion. What the parents, as parents, could have recovered from themselves as tort-feasors had they not failed to give the written notice required of them under the statute and the policy, if not otherwise barred on principles of comparative negligence, is wholly separate and distinguishable from what the guardian on behalf of the infant could recover from the parents and their insurer. The reality then is that the exception now declared is predicated upon the fear that without it the insurer may be seriously prejudiced if not possibly defrauded. But any prejudice that may arise from loss of “the carrier’s right to an early investigation must, under the mandate of section 167 of the Insurance Law, yield to the paramount right of the accident victim to protection, no matter how dilatory the insured may have been” (Lauritano, supra, at p 571). Nor, in view of the jury’s ability to distinguish between *622 valid and fraudulent claims, is the possibility of fraudulent law suits arising out of the parent-child relationship sufficient to overcome the “definite and vital interest of society in protecting people from losses resulting from accidents” (Gelbman v Gelbman, 23 NY2d 434, 438-439). Not without significance in this respect is the absence from section 167 of any provision as to injury to a child similar to that contained in subdivision 3 of that section with respect to injury to a spouse, for the existence of subdivision 3 establishes that when the Legislature believed the insurer in need of the protection through exclusion of a risk from the policy without increased premium for the increased risk, it knew how to provide for it. It is, as we have but recently emphasized in Pajak v Pajak (56 NY2d 394, 397; see McKinney’s Cons Laws of NY, Book 1, Statutes, § 3) for the Legislature, not this court, to fashion exceptions to an otherwise clear statute in order to alleviate what may appear to be potentially harsh results. The wisdom of that rule is illustrated by the exception now judicially declared, which, though declared in the instant case because “in reality” the action is by the parent, can be as readily applied to any injured person, adult or infant, related in a sufficiently close degree to the insured to be the object of covinous activity by the latter.
If as I believe is demonstrated by the foregoing discussion the Appellate Division’s “in reality” rationale is fallacious, its reasoning concerning the absence of a tolling provision from the statute falls with it. This is because, eschewing the broader “tolling” analysis of Insurance Co. of Greater N. Y. v 156 Hamilton Realty Corp. (72 AD2d 403) that infancy can never, in and of itself, provide an excuse for delay by a claimant in giving notice to the insurer, the Appellate Division in the instant case held that though infancy could under subdivision (d) excuse a claimant’s delay, it did not because this suit is “in reality” by the parents against the insurer, a position already shown to be erroneous. In my view, however, the tolling analysis of 156 Hamilton (a 3 to 2 decision of the Appellate Division, 1st Dept) does not sustain the result in the instant case either. Its rationale is that because the 1976 Legislature chose, in permitting extension of an infant’s time to file a notice of *623 claim against a municipality during the entire minority of the child, to subject that extension to the discretion of a court under the criteria set forth in subdivision 5 of section 50-e of the General Municipal Law, and the 1958 Legislature in enacting section 608 of the Insurance Law, which in subdivision (c) specifies infancy as one of the disabilities which can excuse the filing of an affidavit under the Motor Vehicle Accident Indemnity Law and uses “reasonably possible” language similar to that contained in section 167 (subd 1, par [d]), the 1939 Legislature must be deemed, by reason of its failure in the latter paragraph to refer specifically to “infancy” not to have intended infancy to be considered in determining whether the filing of notice with the insurer was reasonably possible. So to use the acts of a later Legislature as a basis for interpreting the intention of the earlier Legislature, while permissible when the issue is the construction of two parallel earlier statutes, one amended and the other not (Rozler v Franger, 61 AD2d 46, affd on opn below 46 NY2d 760; see Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach, 39 NY2d 1029, affg on opn at 79 Misc 2d 438; McKinney’s Cons Laws of NY, Book 1, Statutes, § 223), clearly should not be resorted to in the circumstances of the present case for the 1939 “lawmakers cannot be charged with a knowledge of future laws” (McKinney’s, Statutes, loc. cit.).
Indeed, quite the contrary conclusion should here be drawn. The 1939 Legislature enacted in paragraph (d) what this court has characterized as an “ameliorating provision [which] sanctions late filing in those cases in which valid excuses are proffered” (Matter of Lloyd [MVAIC], 23 NY2d 478, 482). It did so by giving to an injured claimant a right wholly independent of the. insured. It must be presumed to have known that some of the claimants whose rights it thus enhanced would be infants or mentally or physically incapacitated, yet it left determination of the validity of a claim by one under such a disability to the factual determination whether it “be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.” The fact that in 1939 an unemancipated infant could not sue his or her parent *624 for a nonwillful tort (Badigian v Badigian, 9 NY2d 472) affords no contrary inference for, of course, not all injured infant claimants would be claiming for an injury by a parent-insured. To the contrary, for the reason already advanced above with respect to subdivision 3 of section 167, the failure of the Legislature to amend paragraph (d) of subdivision 1, after reversal of the Badigan rule by Gelbman (supra), can be taken as indicating its belief that the probability of successful fraud was so slight as not to warrant statutory protection of the carrier.* Thus to infer from the 1958 MVAIC legislation and the 1976 municipal notice of claim provision that the 1939 Legislature intended to charge all infants with the neglect of their parents to give notice and make no allowance at all for the effect of infancy on the independent rights of the infant claimant, if not a complete nonsequitur, is simply untenable. The more particularly is this so when one realizes (1) that all three statutes call for a factual determination of the effect of disability, the only difference being that under the General Municipal Law the determination is a condition of filing while under the other two statutes it is a condition of recovery, and (2) that nothing in the 1938 presentation by the insurance industry in opposition to amendment of section 167 suggests that it believed infancy not to be part of the “reasonable possibility” equation and, therefore, was misled in its actuarial calculations of liability insurance premiums.
Because the statute gives Daniel an independent right to give notice to and to recover from the carrier, he is no more vicariously chargeable with his parents’ delay than would any other claimant be chargeable with the delay of the unrelated tort-feasor-insured who caused his or her injury. The conditions imposed upon the exercise of those rights are that it be shown that it was not reasonably possible that notice be given within the time prescribed by the *625 policy and that notice was given as soon as was reasonably possible. When those two conditions are met “the statute shifts the risk of the insured’s delay to the compensated risk-taker who can initially accept or reject those for whom it will bear such risks” (Lauritano v American Fid. Fire Ins. Co., 3 AD2d 564, 568, supra).
The policy prescribed time for notice of an occurrence under its comprehensive personal liability coverage is “as soon as practicable,” a standard less stringent than the statute’s “as soon as reasonably possible” (cf. Greyhound Corp. v General Acc. Fire & Life Assur. Corp., 14 NY2d 380; Deso v London & Lancashire Ind. Co. of Amer., 3 NY2d 127; Mason v Allstate Ins. Co., 12 AD2d 138; see 2 NY PJI 1015). In the present case, therefore, the factual determinations under both prongs of the statute are essentially similar and in either case factual issues are involved (id.; Ferguson v Nationwide Mut. Ins. Co., 61 Misc 2d 912). The Supreme Court held, whether as a matter of law or of fact is not clear, that delay prior to the appointment of a guardian was not a bar. The Appellate Division which held infancy irrelevant did not consider what effect it should have if relevant. The law has not blindly insisted upon majority as the point for removal of disability in all cases. Thus, emancipation prior to majority has triggered certain infant rights (Badigian v Badigian, 9 NY2d 472, supra), and the common law gave a 12 year old a voice in determining his religious training (Martin v Martin, 308 NY 136) and has held infants of varying ages well below 18 responsible for torts or for contributory (now comparative) negligence (see PJI 2:23, 2:49). It is not the place of a dissent to determine whether there legally could have been or factually was a point prior to appointment of Daniel’s guardian when it was “reasonably possible” for him to give notice. The Appellate Division having failed to consider the issue at all, the matter should be remitted for its consideration of the facts and the law, if as above suggested the Supreme Court judgment is not reinstated because of Allstate’s defective notice of disclaimer.
Order affirmed, etc.

 Indeed the contrary can be inferred, for Edwin Patterson, the Chairman of the Committee on Insurance Law Revision, speaking of requested revisions (later made) to what is now subdivision 3 of section 167, said (Hearings, NY Legislative Joint Committee for Recodification of the Insurance Law [1938], p 694): “As far as I am concerned, I would rather not make any exceptions to this liability, unless it is shown that a definite abuse has developed. That was the purpose of the amendment of 1937 and unless you can show there is some recognized evil to be avoided, I do not see why those policies should not come under the usual classifications.”