84 F.3d 622
 AXA MARINE AND AVIATION INSURANCE (UK) LIMITED, and Marine
Insurance Co. Ltd., Plaintiffs-Appellees,
v.
SEAJET INDUSTRIES INC., Sea Jet Trucking Inc., and A.P.A.
Warehouse Inc., Defendants-Appellants.
 No. 1107, Docket 95-7821.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 29, 1996.
Decided May 24, 1996.
 
 Mark I. Silberblatt, New York City (Edward H. Burnbaum, Lynch Rowin Novack Burnbaum & Crystal, New York City, of counsel), for Appellants.
 Brendan J. Malley, New York City (Mendes & Mount, New York City, of counsel), for Appellees.
 Before: VAN GRAAFEILAND, MESKILL and WINTER, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 This is an appeal from a final judgment of the United States District Court for the Southern District of New York, Leisure, J., Axa Marine and Aviation Ins. (UK) Ltd. v. Seajet Indus., 891 F.Supp. 978 (S.D.N.Y.1995), denying the motion for summary judgment by defendants-appellants Seajet Industries, Inc., Seajet Trucking Inc., and A.P.A. Warehouse, Inc. (Insureds), and granting the cross-motion for summary judgment by plaintiffs-appellees AXA Marine and Aviation Insurance (UK) Limited, and The Marine Insurance Co., Limited (Underwriters). We have appellate jurisdiction under 28 U.S.C. § 1291.
 
 
 2
 Underwriters brought the present action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that their obligation to defend and/or indemnify Insureds was excused by Insureds' failure to provide timely notice of claim, as required by the governing policy. The district court held that New York's "no prejudice" rule applied to the instant dispute, and that Underwriters therefore were entitled to refuse to defend and/or indemnify Insureds without making a showing of prejudice resulting from the failure by Insureds to provide timely notice of claim. Insureds appealed.
 
 BACKGROUND
 
 3
 The facts of this case are not in dispute. Insureds owned and operated a trucking business and a number of warehouses located in Brooklyn, New York. Underwriters issued a policy covering Insureds' liability incurred between March 29, 1990 and March 28, 1991 resulting from damage to or loss of the property of others while in the care of Insureds. On December 5, 1990, the Brooklyn warehouses were robbed, and property belonging to several bailors was taken. Insureds gave prompt notice of the robbery to their insurance broker, Coverage Consultants, Inc., which in turn notified Underwriters. One of the bailors, Cherry Stix, Ltd., was insured by American Motorists Insurance Company (American Motorists). American Motorists, as subrogee of Cherry Stix, Ltd., brought an action against Insureds in New York State Supreme Court, and served a summons on Insureds some time after December 20, 1991.
 
 
 4
 Insureds never responded to the summons and never forwarded a copy of the summons to Underwriters as required by the policy. Subsequently, on March 30, 1992, American Motorists gave notice to Insureds that a motion for default would be made within the next thirty days. Again, Insureds did not respond or notify Underwriters. On or about July 20, 1992, American Motorists served a motion for default judgment in the amount of $595,032. Again, there was no response by Insureds and no notice given to Underwriters. Finally, on September 16, 1992, default judgment was entered against Insureds.
 
 
 5
 After entry of the default judgment, Insureds notified Underwriters of the American Motorists action. Underwriters assigned counsel to the matter, subject to a reservation of rights, in an effort to have the default judgment vacated. Counsel was successful in vacating the default judgment, but while the motion to vacate was pending, Underwriters denied coverage under the policy on the ground that Insureds failed to provide prompt notice of the American Motorists action. Underwriters then brought this action seeking a declaratory judgment that their obligations under the policy were terminated.
 
 
 6
 The relevant provision of the policy provided that:
 
 
 7
 If any claim(s), whether groundless or not, be made against the Insured on account of loss of or damage to property, the Insured shall notify the Company as soon as practicable and if suit is filed against the Insured to enforce any claim(s), the Insured shall immediately forward to the Company all summons or other notice(s) served upon the Insured.
 
 
 8
 The district court concluded as a matter of law, and the parties agree, that Insureds failed to notify Underwriters of the American Motorists claim or forward the relevant suit papers in a reasonable time. However, the parties disagree as to the need for Underwriters to show that they were prejudiced to deny coverage.
 
 DISCUSSION
 A. Standard of Review
 
 9
 We review de novo the district court's grant of summary judgment. Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir.1995). Summary judgment is not appropriate unless there are no genuine issues of material fact and unless the undisputed facts warrant judgment as a matter of law for the moving party. Id. The facts in this case are not in dispute, thus summary judgment is proper if Underwriters are entitled to judgment as a matter of law. The district court properly held that New York law governs this dispute. Steinbach v. Aetna Cas. & Sur. Co., 81 A.D.2d 382, 385, 440 N.Y.S.2d 637, 640 (1st Dep't 1981) (holding that a court should apply the law of the state "which the parties understood would be the principal location of the insured risk and the one most intimately concerned with the outcome of the litigation." (quotations omitted)).
 
 
 10
 B. The Alleged Harms Suffered by Underwriters
 
 
 11
 Underwriters allege several harms resulting from Insureds' failure to give Underwriters notice of the American Motorists claim. They cite the default judgment entered against their insured, for which Underwriters could have been held directly responsible under N.Y. Ins. Law § 3420(a)(2) (McKinney 1985).[1] Underwriters also incurred legal expenses in persuading the New York Supreme Court to vacate the default judgment. Furthermore, Underwriters claim that the delay caused them to lose the opportunity to settle the American Motorists claim early, before litigation positions hardened.
 
 
 12
 If Underwriters proved that these alleged harms prejudiced them, they would be legally justified in terminating their duty to defend and indemnify. Unigard Security Ins. Co. v. North River Ins. Co., 79 N.Y.2d 576, 581, 584 N.Y.S.2d 290, 292, 594 N.E.2d 571, 573 (1992); Restoration Realty Corp. v. Robero, 58 N.Y.2d 1089, 1091, 462 N.Y.S.2d 811, 812, 449 N.E.2d 705, 705-06 (1983); Toyomenka Pacific Petroleum v. Hess Oil V.I. Corp., 771 F.Supp. 63, 68 (S.D.N.Y.1991). However, Underwriters need not demonstrate prejudice to justify terminating their obligations under the policy. The New York Court of Appeals has adopted the no prejudice rule in cases involving a failure to give notice of occurrence and we believe that that court would apply the same rule to a case like this one, involving the failure to give notice of claim. See Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir.1994) (stating that "[w]here the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." (citation omitted)).
 
 C. New York's "No Prejudice" Rule
 
 13
 Under the no prejudice rule, "the notice provision for a primary insurer operates as a condition precedent and ... the insurer need not show prejudice to rely on the defense of late notice." Unigard Security, 79 N.Y.2d at 581, 584 N.Y.S.2d at 292, 594 N.E.2d at 573 (citations omitted). Thus the no prejudice rule is an exception to two principles of the common law of contracts:
 
 
 14
 (1) that ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice ...; and (2) that a contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.
 
 
 15
 Id. (citations omitted).
 
 
 16
 The New York Court of Appeals has characterized the no prejudice rule as a "presumption of prejudice." Unigard Security, 79 N.Y.2d at 584, 584 N.Y.S.2d at 294, 594 N.E.2d at 575 (stating, in a late notice of occurrence case, that a "reinsurer must demonstrate how [late notice] was prejudicial and may not rely on the presumption of prejudice that applies in the late notice disputes between primary insurers and their insureds" (emphases added)). Except in cases where some excuse makes the delayed notice reasonable, it is clear that the presumption is a conclusive one. New York v. Blank, 27 F.3d 783, 793-94 (2d Cir.1994) (stating that "under New York law, '[a]bsent a valid excuse' the insured's failure to provide notice 'vitiates coverage' ") (quoting In re Allcity Ins. Co. and Jiminez, 78 N.Y.2d 1054, 1055, 576 N.Y.S.2d 87, 88, 581 N.E.2d 1342, 1343 (1991)).
 
 
 17
 The no prejudice rule relieves the burden on the insurer to prove that prejudice resulted from the insured's failure to provide notice. The New York Court of Appeals recently noted that other courts have articulated the various rationales for the no prejudice rule. Unigard Security, 79 N.Y.2d at 581-82, 584 N.Y.S.2d at 292, 594 N.E.2d at 573. Among those rationales cited by the Unigard Security Court were
 
 
 18
 that 'the insurer [must have] an opportunity to protect itself' ...; that without timely notice, 'an insurer may be deprived of the opportunity to investigate a claim and is rendered vulnerable to fraud' ...; and that late 'notification may ... prevent the insurer from providing a sufficient reserve fund' ( ...; and see, Security Mut. Cas. Co. v. Century Cas. Co., 531 F.2d 974, 978 [ (10th Cir.), cert. denied, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976) ] [prompt notice permits the primary insurer to make an early estimate of potential exposure, to investigate the claim while witnesses and facts are available, and to take steps to prevent fraud]; Commercial Union Ins. Co. v. International Flavors & Fragrances, 822 F.2d 267, 271 [ (2d Cir.1987)] [early notice enables the insurer, inter alia, to exercise early control over the claim and enhances the possibility of settlement] ).
 
 
 19
 Id. (citations omitted). Underlying all of these distinct rationales is the difficulty of measuring or proving the harm caused by untimely notice. Cf. American Ins. Co. v. Fairchild Indus., 56 F.3d 435, 440-41 (2d Cir.1995) (stating that "[a]n insurer cannot be expected to show precisely what the outcome would have been had timely notice been given. This uncertainty, however, is the result of the failure of the insured to comply with the policy.").
 
 
 20
 There are two types of notice provisions in an ordinary insurance policy; notice of occurrence and notice of claim. The typical notice of occurrence provision requires that an insured notify its insurer of events that reasonably might give rise to liability covered by the policy. Id. at 439. A notice of claim provision requires that an insured notify its insurer whenever any assertion of liability is made by a third party. Id.
 
 
 21
 The New York Court of Appeals has held that the no prejudice rule applies to disputes between primary insurers and their insureds in the context of failure to give timely notice of occurrence. However, there is no reported Court of Appeals decision addressing whether the no prejudice rule applies to the failure to give timely notice of claim. Thus we must determine how the New York Court of Appeals would rule. Travelers Ins. Co., 14 F.3d at 119.
 
 
 22
 In Unigard Security, the Court of Appeals recited many rationales supporting the no prejudice rule. One of those rationales was that prompt notice allows an insurer to control litigation and enhances the chance of settlement. Unigard Security, 79 N.Y.2d at 582, 584 N.Y.S.2d at 292, 594 N.E.2d at 573. Although Unigard Security was a notice of occurrence case, the court addressed the no prejudice rule in general terms. We believe that an insurer's interest in early control over litigation is served as much by prompt notice of claim as by prompt notice of occurrence, Blank, 27 F.3d at 794, and that this rationale supports the conclusion that the no prejudice rule also applies to the untimely notice of claim.
 
 
 23
 Insureds contend that the no prejudice rule does not apply where the insured gives untimely notice of claim but prompt notice of occurrence. They rely on Appellate Division decisions that distinguish between notice of occurrence provisions and notice of claim provisions on the ground that notice of claim is of little value to an insurer. We do not believe that these cases accurately reflect how the Court of Appeals would decide this question. The Court of Appeals' decision in Unigard Security recognized an insurer's interest in taking early control of litigation and in early settlement of claims, an interest not taken into account by the Appellate Division cases cited by Insureds. The loss an insurer suffers when it misses the early opportunity to settle a case, like the loss of the chance to promptly investigate an occurrence, is difficult to quantify or prove. Moreover, our cases decided since Unigard Security support our determination that the no prejudice rule should apply to notice of claim provisions.
 
 
 24
 We recognize that decisions of lower courts of the forum state must be given "proper regard" when a state's highest court has not spoken directly to an issue. Travelers Ins. Co., 14 F.3d at 119 (quoting Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967)). However, it is also proper to consider the decisions of "federal cases which construe the state [rule]." Travelers Ins. Co., 14 F.3d at 119 (quoting In re E. and S. Dist. Asbestos Litig., 772 F.Supp. 1380, 1391 (E. & S.D.N.Y.1991), rev'd in part on other grounds sub nom. In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831 (2d Cir.1992)).
 
 
 25
 The Appellate Division cases cited by Insureds rely on the argument that prompt notice of occurrence is of far greater value to an insurer than is prompt notice of claim. Lauritano v. American Fidelity Fire Ins. Co., 3 A.D.2d 564, 571, 162 N.Y.S.2d 553, 559 (1st Dep't 1957), aff'd, 4 N.Y.2d 1028, 177 N.Y.S.2d 530, 152 N.E.2d 546 (1958); Home Indem. Co. v. State Farm Mut. Auto. Ins. Co., 64 A.D.2d 212, 214, 409 N.Y.S.2d 673, 674 (3d Dep't 1978); Brooklyn Union Gas Co. v. North River Ins. Co., 124 A.D.2d 621, 621-22, 508 N.Y.S.2d 26, 26 (2d Dep't 1986). Even accepting the overriding importance of notice of occurrence, several factors, including the Unigard Security decision, lead us to conclude that the New York Court of Appeals would apply the no prejudice rule to our case.
 
 
 26
 In Lauritano, the dispute was over the contours of Insurance Law section 167(c) (now N.Y. Ins. Law § 3420(a)(3) (McKinney 1985)), which allows an injured party to give notice to the liable party's insurer to protect its right of direct suit against the insurer under section 3420(a)(2). Lauritano, 3 A.D.2d at 568, 162 N.Y.S.2d at 556. The majority held that an injured party should not be subject to as strict a standard in judging the reasonableness of delay in giving notice as should an insured, id., especially because notice of claim pales in comparison to notice of occurrence, and the insurer nearly always could be placed in as good a position as if timely notice were given. Id. at 571, 162 N.Y.S.2d at 559; see also Aetna Ins. Co. v. Millard, 25 A.D.2d 341, 344, 269 N.Y.S.2d 588, 591 (3rd Dep't 1966) (finding no prejudice to the insurer because the injured party did not take a default judgment against insurer). The crux of the Lauritano case was the reasonableness of the delay, however, not the necessity of demonstrating prejudice from the delay. In fact, the no prejudice rule was not at issue in Lauritano.
 
 
 27
 We realize that the Brooklyn Union and Home Indemnity Courts, citing Lauritano, held that the insurer in each case had not been prejudiced by the untimely notice of claim, thus implying that the insurer needed to demonstrate prejudice to escape its obligations on the grounds of late notice of claim. Those courts apparently relied on Lauritano 's quick dismissal of the benefits to an insurer of timely notice of claim to decide that the no prejudice rule did not apply to those cases. However, the Home Indemnity and Brooklyn Union cases are inapposite because the insurers there actually did have notice of the claims, although not from their insured. Home Indemnity, 64 A.D.2d at 213, 409 N.Y.S.2d at 674 (noting that the insurer raising the defense of late notice of claim had received a communication from the attorney of the injured party informing the insurer of the accident with the insured's vehicle and that a question existed as to whether the driver had permission to drive the vehicle); Brooklyn Union, 124 A.D.2d at 621, 508 N.Y.S.2d at 26 (stating that the "[insurer] received timely notice of the accident and the main action to recover damages for personal injuries" (emphasis added)). Moreover, like the Lauritano Court, the Home Indemnity and Brooklyn Union Courts did not address the insurer's interest in early settlement.
 
 
 28
 Our cases decided since Unigard Security also support our conclusion that the no prejudice rule applies here. We noted in Blank that the considerations expressed by the Unigard Security and other courts in support of the no prejudice rule, "particularly the concerns over an insurer's capacity to conduct litigation and settlement negotiations, apply equally to notice-of-claim provisions." Blank, 27 F.3d at 794; see also American Ins. Co., 56 F.3d at 440 (stating that "[t]he lack of notice of a claim thus relieves Fireman's Fund of any obligation under most of the insurance policies at issue" without requiring a showing of prejudice). The value to an insurance company of the opportunity to settle a claim early should not be underestimated. Early settlements limit the company's exposure and may protect the insured from a judgment in excess of the policy coverage. When notice of claim is delayed, the ability of the insurance company to approach the injured party with a settlement offer early in the litigation is often lost.
 
 
 29
 It is difficult to quantify the prejudice to an insurer who has lost the opportunity to reach an early settlement. To prove prejudice, the insurer would have to show what the offer would have been and the likelihood that the injured party would have accepted it. The unlikelihood of succeeding in this daunting task suggests that fairness requires the application of the no prejudice rule. See American Ins. Co., 56 F.3d at 440-41 (stating that the "uncertainty ... is the result of the failure of the insured to comply with the policy, and it should not be permitted to use that uncertainty as a weapon against the insurer"). If the prejudice suffered were quantifiable and proven, insurers would be entitled to deny coverage. Unigard Security, 79 N.Y.2d at 581, 584 N.Y.S.2d at 292, 594 N.E.2d at 573. Because the prejudice of untimely notice of claim is likely and may be significant but unquantifiable, the no prejudice rule is appropriate.
 
 
 30
 Early notice of claim is important to an insured for several reasons. An early settlement can cap liability as to those injuries or damages that the parties were aware of at the time of settlement and the results of those injuries or damages. Mangini v. McClurg, 24 N.Y.2d 556, 568, 301 N.Y.S.2d 508, 518, 249 N.E.2d 386, 393 (1969) (holding that a party seeking to overturn a general release must show that "he did not know and could not know of the later revealed injuries"); Pokora v. Albergo, 130 A.D.2d 473, 515 N.Y.S.2d 56, 56-57 (2d Dep't 1987).
 
 
 31
 In cases where the insured or its employees are likely to testify in pretrial proceedings, obtaining counsel for the insured and the insured's employees is critical. If the notice of claim is delayed, the insured's employees might make inappropriate statements to investigators for the injured party, thus providing information harmful to the insured's exposure and that of the insurer.
 
 
 32
 The insurer's own investigative interests served by prompt notice of occurrence are also served by prompt notice of claim. See Blank, 27 F.3d at 794 (noting that the interest in early investigation, and other interests "apply equally to notice-of-claim provisions"). Whereas notice of the robbery in this case allowed Underwriters to investigate promptly the facts pertaining to the actual robbery, the investigation could not at that time focus on the particular claims made by the individual claimants. While an occurrence may, at first blush, seem to be unsuspicious, a particular claim, in light of the facts of the occurrence, may indicate collusion between the insured and the claimant.
 
 
 33
 In this case, the stolen transport containers were sealed and the manifests indicated only that the containers held ladies' apparel. In making a claim against Insureds, the claimed contents of those containers would have come to light, and while there is no evidence or allegation of collusion or wrongdoing on the part of Insureds or Cherry Stix, Ltd., the possibility of fraudulent claim is something an insurer is entitled to minimize. Prompt notice of claim is a valuable tool which insurers may use to protect themselves from fraud. Moreover, other contractual defenses might be available which depend on circumstances not investigated at the time of the occurrence. Thus the need for prompt investigation supports the application of the no prejudice rule to notice of claim cases. Id. at 794.
 
 
 34
 In sum, we conclude that the New York Court of Appeals would apply the no prejudice rule to this case, and conclude that Underwriters are entitled to a declaration that their obligations under the policy are excused by Insureds' failure to give notice of claim in a reasonable time.
 
 D. Judicial Estoppel
 
 35
 Insureds contend that Underwriters are judicially estopped from denying coverage as a result of the representations made by the attorneys retained by Underwriters to vacate the default judgment in the American Motorists action. The attorneys stated, in their motion to vacate, that "[c]overage under the policy to defendants for legal liability arising out of the incident which forms the basis of this action, has not, to date, been declined by underwriters."
 
 
 36
 Judicial estoppel is a doctrine that forbids a party from advancing contradictory factual positions in separate proceedings. The doctrine attempts to insure "the sanctity of the oath and the integrity of the judicial process." Bates v. Long Island R.R., 997 F.2d 1028, 1037 (2d Cir.), cert. denied, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). A party invoking judicial estoppel must show that (1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner. Id. at 1038.
 
 
 37
 The district court relied on the first prong of the above standard and held that judicial estoppel was not applicable in this case because the in-court statement made by the attorneys assigned by Underwriters was not inconsistent with AXA's denying coverage now. The district court held that their statement placed the New York Supreme Court on notice that the coverage was subject to being declined, and that AXA's subsequent denial of coverage was entirely consistent with the prior statement. We agree. By stating that coverage had not been declined, "to date," the attorneys expressly avoided committing Underwriters to any future course. Thus they were not estopped from later denying coverage.
 
 CONCLUSION
 
 38
 For the reasons stated above, the judgment of the district court is affirmed.
 
 VAN GRAAFEILAND, Circuit Judge, concurring:
 
 39
 New York is one of the minority of states that apply the "no prejudice" rule in cases involving late notices of occurrence. See Ostrager and Newman, Handbook on Insurance Coverage Disputes §§ 4.02[c]-, 4.04 (7th ed.1988). The question not yet answered by the New York Court of Appeals is whether New York will apply the same unyielding doctrine in cases involving late notices of claim or suit, or whether it will follow the majority of jurisdictions by holding that an "insured's failure to forward demands or other court papers will not relieve an insurer of its duties to defend or indemnify absent a showing of prejudice to the insurer." Id. § 402[b], at 90.
 
 
 40
 In addition to the cases of Lauritano v. American Fidelity Fire Ins. Co., 3 A.D.2d 564, 162 N.Y.S.2d 553 (1957), aff'd, 4 N.Y.2d 1028, 177 N.Y.S.2d 530, 152 N.E.2d 546 (1958), Home Indem. Co. v. State Farm Mut. Auto. Ins. Co., 64 A.D.2d 212, 409 N.Y.S.2d 673 (1978), and Brooklyn Union Gas Co. v. North River Ins. Co., 124 A.D.2d 621, 508 N.Y.S.2d 26 (1986), cited by my colleague, there are other lower court decisions in New York that inject the requirement of prejudice into carriers' defenses against coverage in cases of this nature. See, e.g., Aetna Ins. Co. v. Millard, 25 A.D.2d 341, 343-44, 269 N.Y.S.2d 588 (1966); Cohen v. East Coast Ins. Co., 54 Misc.2d 813, 815, 283 N.Y.S.2d 371 (1967); Zappia v. Allstate Ins. Co., 28 Misc.2d 723, 724, 212 N.Y.S.2d 698 (1961). These cases hold in substance that where, despite an insured's failure to turn over process, the insured's carrier is given an opportunity to defend, the carrier may not disclaim because of such failure.
 
 
 41
 The differences between the "no prejudice" adherents and the requirement-of-prejudice adherents are highlighted in Lauritano, supra. The insurance policy in that case contained a notice of claim provision almost identical with the one at issue herein. There, the majority in the Appellate Division distinguished between notices of occurrence or accident, on the one hand, and notices of claim or suit, on the other, stating with regard to the latter that "[i]t would be a rare occasion indeed when the carrier could not be placed in just as good a position as it would have enjoyed had the insured complied fully with his obligations." 3 A.D.2d at 571, 162 N.Y.S.2d 553.
 
 
 42
 The dissent in Lauritano put this holding squarely in issue when it said:
 
 
 43
 The provisions of the policy are unambiguous, and state that no action is maintainable "unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of the policy."
 
 
 44
 Id. at 581, 162 N.Y.S.2d 553.
 
 
 45
 The dissent followed this statement with the unqualified holding that the insured's failure to deliver the summons and complaint to the carrier was "fatal to this action." Id.
 
 
 46
 In the face of this clear-cut divergence between the majority and the dissent, the Court of Appeals' affirmance, albeit without opinion, should not be lightly dismissed. This affirmance made the Court of Appeals "responsible only for the point decided, and did not make [the Court's members] guarantors of all the reasons given or opinions expressed." See Rogers v. Decker, 131 N.Y. 490, 493, 30 N.E. 571 (1892). However, although an affirmance without opinion does not make the Appellate Division's decision binding authority, it does make the decision "persuasive" authority. See Tepper v. Tannenbaum, 65 A.D.2d 359, 360-61, 411 N.Y.S.2d 588 (1978).
 
 
 47
 In the light of all the foregoing, I am not convinced that the New York Court of Appeals would apply its "no prejudice" rule generally and without exception in all notice of claim or suit cases. I therefore would limit our holding to the facts of the instant case, where the carrier was required to spend time and money to cure the default, thereby establishing at least some degree of prejudice. With this limitation, I concur.
 
 
 
 [1]
 N.Y. Ins. Law § 3420(a)(2) (McKinney 1985) requires that all insurance policies insuring against damage to property include a provision that
 in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may ... be maintained against the insurer under the terms of the policy or contract.
 If such a provision is not included in the policy, a court construing the policy will enforce it as if it did include the provision. N.Y. Ins. Law § 3103(a) (McKinney 1985).