**UNITED STATES of America, Plaintiff**

v.

**VARIOUS De FACTO JOINT VENTURES or Partnerships Designated As (1) Eagle/Durso/Metro Lane/ et al.; (2) Eagle/Durso/Jessico/ et al.; (3) Eagle/Durso/Kapco/ et al.; Plus their Individual or Corporate Joint Venturers/Partners, Including (4) William Nappo; (5) Vincent Durso d/b/a V. Durso Co.; (6) David Shuster; (7) Igor Porotsky; (8) Arik Shlai d/b/a Montana Energy; (9) Zakher Sorin a/k/a Zokker Soria d/b/a Kant Energy; (10) Ted Cohen; (11) Metro Land Inc.; and (12) Jessico Oil Inc., Defendants.**

No. 92–CV–2892(TCP).

United States District Court, E.D. New York.

Sept. 30, 1996.

Patricia C. Henry, U.S. Atty's Office, Civ. Div., Brooklyn, NY, Andrew D. Plepler, U.S. Dept. of Justice, Washington, DC, Andrew D. Sklarew, Peter Sklarew, Dept. of Justice, Tax Div., Washington, DC, for U.S.

Marvin E. Kramer, Marvin E. Kramer & Associates, Garden City, NY, for William Nappo, Oil Co. Inc.

Vincent Durso, Scranton, PA, pro se.

Ronald D. Rose, Rose and Koerner, Brooklyn, NY, for David Schuster.

Jerome Reisman, Reisman, Pierez, Reisman & Calica, Garden City, NY, for Igor Porotsky.

Ronald D. Rose, Rose and Koerner, Brooklyn, NY, Stafford Liss, Brooklyn, NY, Jay Zinns, Jacob Zinns & Braff, P.C., New York City, Robert L. Weiner, Robert L. Weiner, Phillips & Weiner, Lindenhurst, NY, for Zakher Sorin.

Robert L. Weiner, Robert L. Weiner, Phillips & Weiner, Lindenhurst, NY, for Jessico Oil Inc., Metro Lano Inc.

## ORDER

PLATT, District Judge.

On December 1, 1995, defendants [1] moved this Court for an order pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. For the reasons set forth below, the motion is granted.

## BACKGROUND

This novel action was brought by the government as a "first attempt to deal with the civil tax consequences of a gasoline 'daisy chain conspiracy' of the type which has been the subject of numerous criminal prosecutions in this and other districts." (Pl.'s Mem. at 1.) The government contends that in 1987 the defendants participated in one or more elaborate schemes designed to defraud the United States of the collection of federal excise taxes on gasoline sales pursuant to Section 4081 of the Internal Revenue Code. The government makes the following allegation in its Complaint:

¶ 4. The schemes involved the exploitation of the gasoline excise provisions of the Internal Revenue Code ... that exempt from taxation bulk sales of gasoline to certain types of entities ... that were registered under I.R.C. § 4101, while imposing the tax on the first sale to an unregistered entity.

¶ 5. The implementation of schemes involved multiple purported transfers of ownership of gasoline among a series of "throughputters" that stored gasoline within the fuel terminal leased an operated by [Eagle].

¶ 6. The gasoline was purchased by Eagle and "sold" (on paper) to [Durso] which held a valid certificate of registry (Form 637)[2] issued pursuant to I.R.C. § 4101, al-

---

1. All defendants, except Vincent Durso d/b/a V. Durso Co., join in this application.

2. A Form 637 Certificate holder is obliged to resell gasoline without charging, collecting, or remitting excise taxes in connection with the sale of gasoline to other 637 Certificate holders. The vendor is required to do the following: (1) secure a copy of the vendee's valid Certificate; (2) confirm by telephone with the local IRS office that the Certificate is valid; and (3) have the vendee sign a standard form acknowledging its purchase of excise tax-exempt gasoline.

lowing other entities to make bulk sales of gasoline to Durso without incurring gasoline excise taxes on those sales.

¶ 7. Durso was designed to be the "burn company" in that it was understood by all involved in the scheme that, when the [IRS] eventually investigated the nonpayment of taxes due on gasoline the title to which purportedly passed through Durso at the Eagle terminal, all fingers would point to Durso as the only person or entity liable under the Internal Revenue Code and Regulations (and Durso would be without any substantial collectible assets).

¶ 8. The schemes involved the use of two shell or fictitious corporations, Montana Energy [owned by Arik Schlai, who has defaulted] and Kant Energy [owned by Zakher Soren] ... to which Durso, the burn company, would purportedly sell the gasoline as if such companies were also registered under I.R.C. § 4101....

¶ 9. The schemes all involved additional purported sales within the terminal, to [Metro Lano], another shell or fictitious corporation. Ultimately, the gasoline was sold in Metro Lano's name to wholesalers and retailers in smaller quantities, whereupon invoices were created showing that the gasoline was sold with the tax included ... [which] purportedly allowed the retailer or wholesaler to rely on a representation that the tax was imposed either on the seller in connection with that sale or on a sale by a supplier further up the distribution chain who was purportedly responsible for the tax.

¶ 10. Regarding the portion of the ... purchase price specified as covering the tax, part of it was distributed among the participants in the scheme while part was absorbed in the compression of the price differences at the various levels of sales (which had collateral benefits to the participants by increasing their sales volume due to more competitive pricing)

Against this factual backdrop, the government offers two theories upon which to impose liability on the defendants. First, the government argues that this Court may find the participating venturers or partners jointly and severally liable for the tax liabilities of the joint ventures or partnerships. Alternatively, the government contends that this Court may hold the defendants liable in tort under State law for conspiring to evade federal excise taxes. Even assuming that the defendants can be deemed joint venturers or partners under either federal or State law, both arguments must fail.

## DISCUSSION

■ This Court begins by noting that there are no common law theories which create tax liability, and that in 1987, the time of the allegedly offending conduct, there was no statutory authority to impose joint and several liability on the defendants. Indeed, this hole in the law is best evidenced by Congress' later enactment in 1990 of Section 4103 of the Internal Revenue Code which, in pertinent part, provides:

> In any case in which there is a willful failure to pay the tax imposed by Section 4041(a)(1), 4081 [concerning the sale of gasoline], or 4091, each person—
>> (1) who is an officer, employee, or agent of the taxpayer who is under a duty to assure the payment of such tax and who willfully fails to perform such duty, or
>> (2) who willfully causes the taxpayer to fail to pay such tax,
> shall be jointly and severally liable with the taxpayer for the tax to which such failure relates.

26 U.S.C. § 4103.

This subdivision addresses precisely the situation at issue here. The fact that Congress found it necessary to enact this provision after the time of the allegedly offending conduct persuades this Court that this theory did not exist as a basis for liability prior to 1990. The provision makes no mention that it is to be applied retroactively. Accordingly, this Court declines the government's offer to impose joint and several liability for the tax liabilities of the joint ventures or partners.

■ In the alternative, the government would have this Court premise liability on the grounds that each of the defendants tortiously conspired to deprive the government of federal excise tax revenue. Simply put, no

such cause of action can be gleaned from New York law.

*CONCLUSION*

For all the above reasons, the motion for judgment on the pleadings must be, and hereby is, granted.

SO ORDERED.