UNITED STATES of America,
Plaintiff,

v.

WEST PRODUCTIONS, LTD., West
Productions Limited Partnership, Diane Corto, Francine Lefrak, Seat of
the Pants Productions, Inc., and Diana Corto, Defendants.

No. 95 Civ. 1424(CSH).

United States District Court,
S.D. New York.

April 19, 2001.

Kathleen M. Riedy, Otto G. Obermaier,
Asst. U.S. Atty., New York City, for Plaintiff.

Alan Shweky, New York, NY, James B. Lewis, Benjamin N. Cardozo School of Law, Yeshiva Univ., New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

In this action brought under the revenue laws, plaintiff United States of America ("the Government") sues one of the individual defendants, Diana Corto, to recover unpaid federal withholding taxes and unemployment taxes assessed by the Internal Revenue Service ("IRS") against an entity the Government calls "West Productions." The parties now cross-move for summary judgment.[1]

## I. BACKGROUND

In 1984 defendant Diana Corto, whose professional experience is as a singer and performer, began to explore the possibility of producing a nationwide tour of West Side Story, the musical play to which Arthur Laurents, Leonard Bernstein, Stephen Sondheim, and Jerome Robbins (collectively "the Authors") had contributed their creative talents. To that end, "[d]uring April 1985 Corto filed a d/b/a certificate under the name West Productions."[2] By July 1985, Corto had obtained from the Authors "second-class rights to the production" of West Side Story, "i.e., rights limited to performance in smaller regional theaters."[3] When Corto attempted to book the production at the Kennedy Center in Washington, D.C., the Authors, acting through their representative, insisted that Corto obtain a first-class license, which in turn required Corto to associate herself with one Francine Lefrak. On August 8, 1985, Corto and Lefrak entered into a license agreement with the Authors to produce West Side Story "on the first-class stage in the United States and Canada." Corto and Lefrak referred to themselves in that license agreement as "Co–Producers."[4]

The production of West Side Story opened at the Kennedy Center in early September 1985 and closed on September 21, never to reopen. During that period the association between Corto and Lefrak dissolved amid mutually rancorous exchanges. While West Side Story had a short run at the Kennedy Center, the subsequent run of the lawsuits and arbitrations generated by these events rivals that of The Fantasticks.

In the case at bar, the Government seeks to recover federal taxes which the IRS says were incurred as the result of the labors devoted to the West Side Story

---

1. The caption to the Government's complaint lists "West Productions, Ltd." and "West Productions Limited Partnership" among the parties defendant. The declaration of Arnold Rifkin, an IRS agent, in support of the Government's motion simply refers to unpaid tax assessments against "West Productions." These discrepancies in the entity's name do not appear to be significant. In this Opinion I will refer to the entity as "West Productions."

2. Crossclaim of defendant Corto against co-defendant Francine LeFrak, filed in the captioned action, at ¶ 8.

3. I have quoted from Judge McKenna's decision following a bench trial in West Productions Ltd. et ano. v. Serino, Coyne & Nappi, Inc. at ano., 88 Civ. 7220(LMM) (S.D.N.Y., decided April 10, 1992 (not reported), at slip op. 3 and fn. 2). I will refer to that decision in text as Serino.

4. The factual recitation in this paragraph of text is derived from Serino at slip op. 2–3. These facts are not disputed on the present cross-motions. The quotation from the license agreement is taken from excerpts from that document which form Ex. C to Corto's affidavit in support of her cross-motion.

production. Specifically, IRS agent Rifkin's declaration recites that:

(a) On December 1, 1986, the IRS made an assessment in the amount of $166,012.92 against West Productions for unpaid withholding taxes for the quarter ended September 30, 1985. The IRS later abated $8,115.32 of that assessment, leaving a total of $157,897.69.

(b) On May 30, 1988, the IRS made an assessment in the amount of $14,972.97 against West Productions for unpaid federal employment taxes for the year ended December 31, 1985.

(c) On January 30, 1989, the IRS made an additional assessment of $6,021.84 against West Productions for unpaid federal employment taxes for the year ended December 31, 1985.

Corto does not deny that these assessments were made and remain unpaid; nor has she ever challenged their amounts.

The Government's complaint to recover these assessments named a number of defendants in addition to Corto, including Francine Lefrak. This Court has had occasion to write a number of opinions in the case, prompted primarily by Corto's efforts to use the Government's tax suit as a vehicle to litigate or relitigate her several contract and tort claims against Lefrak.[5] Those efforts failed, and the case ends as it began, an action by the Government to recover unpaid taxes.

Corto is the sole remaining defendant. Some time ago the Government settled with Lefrak and agreed to dismiss its tax claim against her.[6] At the same time the Government offered to dismiss its tax claim against Corto without requiring any payment by her, if Corto would make documentary disclosure of her then-existing financial situation. Corto declined to make that disclosure when the Government first requested it. Having retained new counsel, in May, 2000 Corto forwarded the requested financial disclosure to the Assistant United States Attorney in charge of the case, and agreed to be questioned about the matter. At that time, however, the Government took the position that a payment by Corto was required to settle the case, which the Government was no longer willing to discontinue against Corto based solely on her financial disclosure.

The Court has no role to play in response to that hardening of the Governmental heart. That is so even if, as Corto's counsel states in a letter to the Court dated April 16, 2001 at 1, the financial disclosure Corto made "showed that Ms. Corto had neither the assets nor income to make any payments to the Government." The Executive Branch of Government, here the Department of Justice acting through the United States Attorney for this District, has the discretionary authority to commence actions on behalf of the Government and thereafter agree to settle them or decline to do so. I must perforce decide the parties' cross-motions for summary judgment.

The Government bases its motion for summary judgment on the asserted fact that at the pertinent times Corto was a general partner of West Productions, and the proposition of law that, as a general

---

5. The Court's prior opinions in this case are reported at 1996 WL 420308 (S.D.N.Y., July 26, 1996); 1997 WL 16646 (S.D.N.Y., January 17, 1997); 1997 WL 45517 (S.D.N.Y., February 4, 1997); 1997 WL 668210 (S.D.N.Y., October 27, 1997); and 1999 WL 1125095 (S.D.N.Y., December 8, 1999).

6. The Government's claims against the West Productions, the defendant partnership, and Seat of the Pants Productions, Inc., a corporate defendant, have not been pressed.

partner, Corto is liable for the tax assessments against West Productions. For that proposition the Government relies upon the New York Partnership Law.

On her cross-motion Corto asserts that at the times these taxes accrued she was not a general partner of West Productions, because Lefrak had as a practical matter ousted her from that position; nor was she a "responsible person" of West Productions, a phrase derived from § 6672 of the Internal Revenue Code, 26 U.S.C. § 6672, which Corto contends constitutes the governing law in the case.

On the factual dispute concerning Corto's status as a partner of West Productions, the Government responds by contending that Corto is judicially estopped from denying that status. The Government bases its invocation of the judicial estoppel doctrine upon Corto's litigation conduct in the *Serino* case before Judge McKenna, which must now be examined in some detail.

Judge McKenna's opinion dated April 10, 1992 in *Serino* constitutes his findings of fact and conclusions of law following a bench trial before him. It appears that in August 1985, in furtherance of efforts to produce *West Side Story*, Corto was instrumental in the making of a television commercial for the production. *Serino*, slip op. at 8. In 1988 Corto applied for and received a certificate of registration of copyright, effective as of August 20, 1987, in the commercial. *Id.* at 1. The certificate of registration stated the author of the commercial to be "Diana Corto individually and dba West Productions, WEST SIDE STORY NAT'L. TOUR—1985." *Id.*

In 1988 Corto, represented by counsel, brought the *Serino* action against an advertising company and a theatrical production company, alleging that they had infringed her copyright in the commercial. Corto identified the plaintiffs in the cap-

tion of her complaint as "WEST PRODUCTIONS LTD. and DIANA CORTO, *as General Partner of West Productions Ltd.*" (emphasis added).

These designations were not mere formalities. The defendants challenged the *Serino* plaintiffs' standing to assert a copyright infringement claim. Corto and her counsel persuaded Judge McKenna that plaintiffs had standing *precisely because* Corto was a partner of West Productions at the pertinent times. Judge McKenna reasoned that "Corto and LeFrak formed, at the least, a general partnership," and that "LeFrak's withdrawal, while it could dissolve the partnership, did not terminate it. LeFrak's withdrawal, therefore, left Corto as the sole remaining partner of an existing partnership, *a fact which the parties have, in effect, stipulated.*" *Serino*, slip op. at 6 (emphasis added). Judge McKenna accepted Corto's self-proclaimed status as a partner of West Productions, and in consequence upheld her standing to sue for copyright infringement:

> [T]he Court finds and concludes that, at the time of the infringement alleged and at the time of the registration of the claim to copyright in the commercial, Corto was the sole remaining partner of West Productions Ltd., of which LeFrak had been, but was no longer, a partner, and that Corto has standing to bring the present action.

*Id.* at 7. Moreover, at the end of his opinion Judge McKenna granted the plaintiffs an interlocutory judgment against one of the defendants "on their claim for copyright infringement."

## II. *DISCUSSION*

### A. *Standard of Review*

The government and Corto cross-move for summary judgment. The standard of review is the same for both. Summary

judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law," Fed. R.Civ.P. 56(c), *i.e.,* "[w]here the record taken as a whole could not lead a rational trier of the fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

If these familiar principles were applied without further considerations to the case at bar, it requires no discussion to demonstrate that Corto's disputed status as a partner of West Productions would preclude summary judgment for either party. A determination of whether or not Corto was a partner of West Productions at the pertinent times would require an evaluation of the credibility of Corto and Lefrak; the accounts Corto and Lefrak have previously given of the genesis, abbreviated life, and demise of their *West Side Story* association are totally irreconcilable, thereby demonstrating "a genuine issue" as to "a material fact." However, the case is complicated by a further consideration: the possible effect upon this factual issue of the doctrine of judicial estoppel, upon which the Government relies and to which I now turn.

B. *Judicial Estoppel*

 Generally speaking, "[t]he doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island Railroad Co.,* 997 F.2d 1028, 1037 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). In *Bates* the Second Circuit, after reviewing earlier authorities, said that "judicial estoppel protects the sanctity of the oath and the integrity of the judicial process." 997 F.2d at 1037. *Bates* identified "two distinct objectives behind judicial estoppel, both of which seek to protect the judicial system. First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions.... Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Id.* at 1038 (footnote omitted). Continuing, the Second Circuit said that "[b]y focusing on the rationales behind judicial estoppel, the elements of the doctrine become clear," and then defined those elements: "First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner." *Id.* (footnote omitted).

Subsequent decisions demonstrate the continuing vitality of the judicial estoppel doctrine in the Second Circuit. *See, e.g., Wight v. Bankamerica Corp.,* 219 F.3d 79, 90–91 (2d Cir.2000); *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 141 (2d Cir.2000); *Mitchell v. Washingtonville Central School District,* 190 F.3d 1, 6 (2d Cir.1999); *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 71–73 (2d Cir.1997); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (2d Cir.1997); and *AXA Marine and Aviation Insurance (UK) Limited v. Seajet Industries, Inc.,* 84 F.3d 622, 628 (2d Cir.1996). Since the applicability of the now clearly defined elements of the doctrine to a given case is fact-specific, it is not surprising to find the Court of Appeals applying the doctrine in some cases and declining to do so in oth-

ers. Thus the Second Circuit refused to apply the doctrine in *Wight*, 219 F.3d at 91 (the party's "allegedly inconsistent position" was not "adopted by the court in some manner"); *Bridgeway*, 201 F.3d at 141 ("we do not view Citibanks's voluntary participation in Liberian litigation, even as a plaintiff, as *clearly contradictory* to its present position"); *Maharaj*, 128 F.3d at 98 ("We are persuaded that there is no clear inconsistency between plaintiff's present and former positions"); and *AXA Marine*, 84 F.3d at 628 ("By stating that the coverage had not been declined, 'to date,' the attorneys expressly avoided committing Underwriters to any future course. Thus they were not estopped from later denying coverage."), but applied the doctrine in *Mitchell*, 190 F.3d at 7 (where plaintiff had previously applied for and received SSI benefits by claiming an inability to work and subsequently asserted in an ADA action that he was able to work, "the district court correctly held that Mitchell was estopped from asserting in the present action that he was capable of performing work that required him to stand or walk") and *Simon*, 128 F.3d at 69 (comparable circumstances in the context of a subsequent ADEA claim; the district court had characterized the estopped party as "the paradigmatic judicial estoppel plaintiff"). *Simon* also notes that "[i]f the statements can be reconciled there is no occasion to apply an estoppel. The same may be said where the first statement was the result of a good faith mistake, or an unintentional error." 128 F.3d at 73 (citations omitted).

■ In the case at bar, I conclude without difficulty that Corto is another "paradigmatic judicial estoppel" party. Both elements the Second Circuit articulated in *Bates* are clearly satisfied. In the *Serino* case Corto forcefully told Judge McKenna that she was a general partner of West Productions; in this case she tells this Court with equal force that she was not. If these are not "clearly contradictory statements," it is hard to imagine what would be.

The second *Bates* element is also satisfied. Judge McKenna "adopted" Corto's claim of partnership in the most striking manner possible: he based his conclusion that Corto had standing to claim copyright infringement upon her status as a partner, and then gave Corto a judgment on that claim. In that regard this case differs from *Bates*, where the Second Circuit held that a settlement of the earlier action prior to verdict and judgment did not satisfy the second element: "A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." 997 F.2d at 1038 (citations and internal quotation marks omitted).

Corto addresses the judicial estoppel doctrine in her brief, but it is difficult to follow her argument. The brief introduces the topic with the statement that "[t]he issue of whether or not Corto was ever a partner was, and is, simply not Corto's to determine," observes that "partnership status is determined by applying legal principles to the particular facts of each case," and contends that "Diana Corto was simply not competent to make the determination as to her status." Brief at 7–8. This is followed by a discernible shifting of gears. Corto's brief goes on to say that "judicial estoppel applies only to a factual position advanced by a party in a prior case," and then contends: "Any prior statement by Corto as to her status as a partner is not a factual position advanced by her. Rather, in applying the relevant facts to the established principles for determining partnership status, the conclusion is inescapable that the relationship

between Lefrak and Corto never achieved partnership status." Brief at 8.

While her brief is not entirely clear, Corto may be making two contentions: the issue of partnership status *vel non* is a mixed question of fact and law, which Corto was not competent to address before Judge McKenna and to which judicial estoppel does not apply; and her self-declared status as a general partner of West Productions was wrong on the facts. But these contentions, viewed separately or together, cannot avoid the application of the judicial estoppel doctrine as delineated by Second Circuit caselaw.

■ While the cases decided by the New York courts play a part in determining an individual's partnership status under the New York Partnership Law, it is counterintuitive, in the context of the objectives served by the judicial estoppel doctrine, to view the question as anything other than one of fact.[7] Corto's individual competence to speak to the issue is entirely beside the point, at least in a case where she was represented by counsel.[8] In that circumstance, Corto cannot be heard to say that her claim of partnership status in *Serino* was the result of "a good faith mistake" or "an unintentional error," *Simon*, 128 F.3d at 73. Quite the contrary: Corto's claim of partnership status was advanced by her counsel in *Serino* to strengthen her position in the litigation, just as her present counsel's denial of that

status is advanced to strengthen her position in the case at bar.[9]

As for the apparent argument that Corto's claim of partnership status in *Serino* was unsupported by the facts, that misses the mark in a judicial estoppel analysis. The decisive point is that Corto made a prior inconsistent claim in litigation which the court adopted.

For these reasons, I conclude that in the case at bar Corto is judicially estopped from denying that she was a general partner of West Productions at the times when the IRS assessed tax indebtedness against that entity.

## C. *The Governing Law*

Since the Second Circuit cases on judicial estoppel compel the conclusion that Corto was a general partner of West Productions at the pertinent times, her liability for the IRS assessments against that entity necessarily follows.

■ The Government relies upon the New York Partnership Law, 38 McKinney's Consol. Laws of N.Y. (West 1988 and 1999 Supp.). Corto does not challenge the applicability of the New York statute (Corto and Lefrak are both residents of the state); nor does she challenge the statute's effect in making her liable as a West Production partner for that entity's debts to the IRS, which in any event follows from the plain wording of the statute.[10]

---

**7.** I have in mind particularly the second objective of judicial estoppel articulated in *Bates*, "to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." 997 F.2d at 1038. Corto cannot be permitted to persuade Judge McKenna that she was a general partner in West Productions and then attempt to persuade this Court that she was not.

**8.** The docket sheet in the *Serino* case indicates that Corto was represented by counsel when

the complaint was filed and during the trial before Judge McKenna.

**9.** I do not mean to suggest by that analysis in text that either counsel acted inappropriately in making these contentions during these two proceedings.

**10.** § 24 of the New York Partnership Law provides that "[w]here, by any wrongful act or omission of any partner acting in the ordinary course of the partnership, ... loss or

Instead, Corto contends that the IRS's efforts to recover these taxes should be restricted to a proceeding under § 6672 of the Internal Revenue Code, 26 U.S.C. § 6672, which provides in § 6672(a) that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." Such an individual is the "responsible person" in the tax collector's vernacular; and Corto apparently thinks that the Government would have a harder time proving that she was a "responsible person" at West Productions than a partner of it.

■ I need not pursue whatever differences of proof may exist between these two vehicles for recovery because it is well established that the Internal Revenue Service may choose between them, as it has done in the case at bar. A leading treatise, 14 Mertens, *The Law of Federal Income Taxation* (West 1997–200), states at § 55:109:

> When a partnership fails to collect and pay over withholding taxes, the Service may either impose a penalty on a specific "responsible person" under Section 6672 or collect the withholding taxes from one or more general partners under the applicable state partnership laws. The two remedies are not mutually exclusive and no court has ruled that Congress intended to preempt state law by enacting Section 6672.

injury is caused to any person, not being a partner in the partnership, or any penalty is incurred," the partnership is liable therefor. The nature of a partner's liability is covered by § 26, which provides in § 26(1) that all

(footnote and collected cases omitted). Corto points out that the Second Circuit does not appear to have squarely addressed the point, but offers no persuasive reasons why this Court should not follow the uniformly declared rule. She is accordingly liable under the New York Partnership Law for these assessments in her capacity as a general partner of West Productions.

### III. *CONCLUSION*

For the foregoing reasons, the Government's motion for summary judgment is granted and Corto's cross-motion for summary judgment is denied.

Counsel for the Government are directed to settle an Order and Judgment consistent with this Opinion before April 30, 2001 on seven (7) days' notice.

It is SO ORDERED.

partners are liable jointly and severally "for anything chargeable to the partnership" under §§ 24 and 25, and in § 26(2) that all partners are jointly liable "for all other debts and obligations of the partnership ... "