331 F.3d 52
 UNITED STATES of America ex rel., Arthur PERLER, Defendant-Appellant,
v.
John PAPANDON, as alleged partner in alleged joint ventures identified as Pilot Petroleum-Petroleum Haulers, Pilot Petroleum-Rappaport Fuel, Pilot Petroleum-Pride Oil, Pilot Petroleum-Cabot Petroleum, Pilot Petroleum-Conlo Services, Pilot Petroleum-General Oil, Joseph Aracri, as alleged
partner in alleged joint ventures identified as Pilot Petroleum-Petroleum Haulers, Pilot Petroleum-Rappaport Fuel, Pilot Petroleum-Pride Oil, Pilot Petroleum-Cabot Petroleum, Pilot Petroleum-Conlo Services, Pilot Petroleum-General Oil, Plaintiffs-Appellees.
 Docket No. 01-6186.
 United States Court of Appeals, Second Circuit.
 Argued: March 6, 2003.
 Decided: June 3, 2003.
 
 Peter Sklarew, Assistant Chief, Civil Trial Section, Northern Region, Tax Division, Department of Justice, Washington, D.C. (Jonathan S. Cohen, Tax Division, Department of Justice, Eileen J. O'Connor, Assistant Attorney General, Annette M. Wietecha, Attorney, Tax Division, Department of Justice, Washington, D.C.; Alan Vinegrad, United States Attorney for the Eastern District of New York, NY, on the brief), for Defendant-Appellant.
 Marvin E. Kramer, Marvin E. Kramer & Associates, P.C., Garden City, NY, for Plaintiffs-Appellees.
 Before: WALKER, JACOBS, CALABRESI, Circuit Judges.
 JACOBS, Circuit Judge.
 
 
 1
 John Papandon and Joseph Aracri operated a daisy chain of shell companies in 1983 to sell and re-sell gasoline in such a way that the federal excise tax then levied on gasoline sales would be incurred by an entity having no assets. (They were convicted of criminal tax fraud in a 1991 proceeding unrelated to this appeal.) In 1995, they were assessed over $6 million in unpaid excise taxes in respect of those transactions in 1983 on the theory that they (New York residents) and their shell companies (incorporated in New York) constituted de facto partnerships, and that each partner was jointly and severally liable for the partnerships' obligation to pay the excise tax. In 1999, they paid about $4800 of the assessment, and promptly filed for a refund with the Long Island district office of the Internal Revenue Service. The refund was disallowed, and they brought suit in federal district court.[1] The Government appeals from a final judgment entered in the United States District Court for the Eastern District of New York (Platt, J.), holding that Papandon and Aracri cannot be jointly and severally liable for the tax liability incurred by a de facto New York partnership. Papandon v. United States, CV-99-7860 (E.D.N.Y. June 28, 2001).
 
 
 2
 We reverse.
 
 
 3
 The proceedings in the district court were foreshortened by the awareness of the parties that Judge Platt had issued an opinion on analogous facts in an earlier case raising the same issue. See United States v. Various de Facto Joint Ventures, 963 F.Supp. 197 (E.D.N.Y.1996) (hereinafter "Various Ventures"). In lieu of cross-motions for summary judgment, the parties entered into a stipulation that we construe as a concession for purposes of this litigation that Papandon and Aracri were partners in alleged de facto partnerships that conducted the daisy chain transactions. The sole issue was whether as a matter of law they were therefore jointly and severally liable under state partnership law for the unpaid excise taxes. The district court adhered to its analysis and holding in Various Ventures, and granted summary judgment in favor of Papandon and Aracri.
 
 
 4
 * In the 1980s, Congress imposed a nine-cent per gallon excise tax on the sale of gasoline by "producers." 26 U.S.C. §§ 4081-83 (1984). (The levy was repealed and replaced in 1986, see Pub.L. No. 99-514 § 1703.) Sales of gasoline from one producer to another were exempt. 26 U.S.C. § 4083 (1984). The term "producers" included wholesale distributors who elected to register with the IRS, 26 U.S.C. §§ 4082(a),(d) (1984); thus sales by one registered wholesale distributor to another were likewise tax-free.
 
 
 5
 During the years 1982 through 1984, Papandon and Aracri owned and operated a registered wholesale distributor called Pilot Petroleum Associates, Inc., which legitimately obtained its gas tax-free from another registered wholesale distributor, General Oil Distributors, Inc. See United States v. Aracri, 968 F.2d 1512, 1515 (2d Cir.1992). Papandon and Aracri sought to have Pilot sell this gasoline to an unlicensed company, Petroleum Haulers, Inc., a transaction that would have triggered excise tax liability. Id. To evade the tax, they used a daisy-chain, a conspiratorial arrangement whereby the gasoline would pass on paper from company to company until one registered wholesale distributor, having no assets, transferred the gasoline to Petroleum Haulers in a taxable transaction. See id. at 1515-16. The company that would incur the tax liability without having assets to pay it is known in such schemes as a "burn" company, perhaps because its role is to go up in smoke. See id. at 1515.
 
 
 6
 Papandon and Aracri prepared fictitious invoices showing sales between Pilot and the burn companies, and reflecting the payment of taxes incurred. See id. at 1515-16. When the government cancelled the registration of one burn company, Aracri and Papandon would incorporate another, and use it in the same way. See id.
 
 II
 
 7
 The government argues that because Papandon and Aracri were partners in a series of de facto partnerships with Pilot and the various burn companies, they are jointly and severally liable under New York law for unpaid excise taxes incurred by the burn companies. Papandon and Aracri argue that individual partners—not partnerships themselves—are taxpayers under the Internal Revenue Code (the "Code"), and that individual partners therefore cannot be held jointly and severally liable for the tax liabilities of the partnership.
 
 
 8
 It is true that partners cannot be held jointly and severally liable for income taxes owed by other partners because, for the purposes of income tax liability, partnerships are not taxpayers. See 26 U.S.C. § 701 ("A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.") (emphasis added). However, the assessment at issue on this appeal is for excise tax, not income tax. Papandon and Aracri cite no section of the Code that provides for the assessment of the gasoline excise tax against partners only, and not against their partnerships.
 
 
 9
 The provision at issue imposed a nine-cent per gallon sales tax on any "producer," defined as "[a]ny person to whom gasoline is sold." 26 U.S.C. §§ 4081, 4082(a) (1984). A partnership is a "person" under the Code. 26 U.S.C. § 7701(a)(1) (1984); cf. Ballard v. United States, 17 F.3d 116, 118 (5th Cir.1994)(stating that "federal law defines partnerships for purposes of applying the partnership income taxation scheme"). Moreover, "[i]ndividuals may constitute a partnership for tax purposes even though they expressly disclaim any intention to enter into a partnership relation." Baughn v. Comm'r, 28 T.C.M. (CCH) 1447, 1456 (1969). Papandon and Aracri concede their participation in de facto partnerships that purchased and sold gasoline, and thus that they were producers within the meaning of the statute. The only question presented is whether they are jointly and severally liable for the sales tax owed by the partnerships.
 
 
 10
 The existence of a partnership is a matter of federal law; but state law determines a partner's liability for partnership obligations. See Ballard, 17 F.3d at 118 ("[I]t is state law that determines when a partner is liable for the obligations ... of his partnership."); United States v. Hays, 877 F.2d 843, 844 n. 3 (10th Cir.1989) (noting that other circuits "have assumed that the liability of a general partner for the tax obligations of the partnership is determined by state law rather than federal law"); Calvey v. United States, 448 F.2d 177, 180 (6th Cir.1971) (applying Michigan partnership law to determine federal tax liability of partners).
 
 
 11
 Under New York law, each partner is jointly and severally liable for wrongful acts or omissions committed by another that cause injury to third parties. See N.Y. Partnership Law §§ 24, 26; see also United States v. W. Prods., Ltd., 168 F.Supp.2d 84, 90 (S.D.N.Y.2001) (stating that joint and several liability of individual partner for unpaid federal withholding and employment taxes of the partnership "follows from the plain wording of the [New York] statute"). Papandon and Aracri concede that they were members of de facto partnerships that orchestrated an evasion of over $6 million in excise taxes. They are jointly and severally liable to pay the taxes.
 
 
 12
 Judge Platt ruled that Papandon and Aracri could be held jointly and severally liable for a partnership's unpaid excise tax obligations only by (impermissibly) applying a common law theory of tax liability. See Papandon v. United States, CV-99-7860 (E.D.N.Y. June 28, 2001); United States v. Various de Facto Joint Ventures, 963 F.Supp. 197, 199 (E.D.N.Y.1996). We think that the government need not rely on a common law theory to assess these taxes. Papandon and Aracri's joint and several liability follows from the imposition of tax liability on partnerships broadly defined by the Code, and from the routine application of partnership principles. Specific Code provisions—not common law — impose the gasoline excise tax on de facto partnerships. See 26 U.S.C. §§ 4082(a), 7701(a)(1) (1984). And the government has the right, as an injured party, to seek redress from individual partners for partnership liabilities. Cf. LiButti v. United States, 107 F.3d 110, 112, 119-20 (2d Cir.1997) (holding that government could place tax lien on assets of corporation to satisfy taxpayer's tax liability if government showed corporation to be taxpayer's alter ego).[2]
 
 
 13
 Judge Platt inferred the absence of joint and several liability in 1983 from the enactment in 1990 of statutory provisions expressly imposing joint and several liability on persons who fail to pay, or who wilfully cause the non-payment of gasoline excise tax. See 26 U.S.C. § 4103 (1990). But the adoption of a federal statutory provision granting a certain remedy does not bar the use of similar state law remedies. Cf. In Re Chateaugay Corp., 94 F.3d 772, 778-79 (2d Cir.1996) (adoption of Code provision permitting setoff of tax refunds against nontax debts owed to federal agencies did not establish the absence of government's common law right of setoff).
 
 
 14
 The judgment is reversed.
 
 
 
 Notes:
 
 
 [1]
 One of the procedural oddities in this case is that the disputed payment furnishing jurisdiction in the district court is a tiny fraction of the full assessment. The jurisdictional requirement for bringing a taxpayer suit in federal court is full payment of the disputed amountSee Flora v. United States, 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (holding that 28 U.S.C. § 1346(a)(1) "requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court"); United States v. Forma, 42 F.3d 759, 763 (2d Cir.1994) (same). The government admits that because Papandon and Aracri lack resources, its chief goal is to obtain a judgment to facilitate collection of assets that may be acquired or may come to light in the future; consequently, the parties entered into a stipulation by which the government was deemed to have filed a counterclaim for the unpaid tax liability. See Stipulation for Resolving Case ¶¶ 3,4. Parties may not stipulate to jurisdiction; however, the government has conceded that the taxes paid by Papandon and Aracri represent taxes owed on six particular transactions, representing a "divisible portion" of the aggregate tax assessment.
 
 
 [2]
 Another procedural oddity in this case is that the government assessed a tax deficiency directly against Papandon and Aracri rather than assessing the deficiency against the partnerships and then pursuing tax liens against Papandon and Aracri. This is, perhaps, explained by the absence of any actual partnership entity against which the government could proceed. But the government's tactic raises a troubling procedural issue: if Papandon and Aracri had been subjected to a tax lien, the government would have assumed the burden of proving the existence of thesede facto partnerships. Here, however, Papandon and Aracri concede their participation in the alleged partnerships.